[No. 1454-3.    Division Three.    June 7, 1976.]

COWLES PUBLISHING COMPANY, *Respondent*, v. THE
DEPARTMENT OF EMPLOYMENT SECURITY, *Appellant.*

*Slade Gorton, Attorney General,* and *Michael E. Tardif,
Assistant,* for appellant.

*Robert H. Lamp* and *Witherspoon, Kelley, Davenport &
Toole,* for respondent.

McINTURFF, C.J.—This appeal is from a judgment of the
Superior Court reversing a decision of the Washington

State Employment Security Department (Department). The Department had awarded unemployment compensation benefits to Diana R. Burger, a former employee of Cowles Publishing Co. (Cowles) when it was determined that her voluntary unemployment was for "good cause" within the meaning of RCW 50.20.050. The decision of the Department was reversed on appeal to the Superior Court, and unemployment benefits were denied, resulting in this appeal.

Diana R. Burger was employed by Cowles as a "category B clerk-typist" from September 2, 1969, to June 29, 1973, at which time she voluntarily quit her job because of "low wages and lack of promotional opportunity." Mrs. Burger was originally employed at a gross pay rate of $66 per 40-hour week in 1969, which rate was increased in annual increments to a gross of $83 per 40-hour week in 1973. A Washington State Wage Survey showed that 50 percent of category B clerk-typists employed in the Spokane area labor market earned a gross of between $82.50 and $102.50 per week at the time Mrs. Burger quit her job. Expert testimony placed Mrs. Burger at the top of this range after consideration of her seniority, job duties, and secretarial skills. The median or prevailing wage in the area for a category B clerk-typist was $90 to $92 gross per week.

There was testimony that Cowles was paying a higher wage to persons of less seniority performing duties comparable to those of Mrs. Burger. Shortly before Mrs. Burger quit her job, three persons in the same department were promoted to new positions by Cowles though these persons had less seniority than Mrs. Burger.

Mrs. Burger was awarded unemployment benefits by the Department when it was determined that she was being paid a wage substantially less than that prevailing for similar work in the Spokane area labor market. On appeal to the Superior Court, the unemployment benefits were withdrawn for the stated reason that Mrs. Burger was being paid less than the prevailing wage for reasons within management prerogative. Although her wages were again found to be low, they were not found to be substantially less than

the prevailing area wage. The trial court concluded that the Department had acted in an arbitrary and capricious manner in awarding unemployment benefits. This appeal followed.

■ Mrs. Burger is claiming unemployment benefits under that section of the Washington Employment Security Act (Act) which provides in pertinent part:

> RCW 50.20.050. Disqualification for voluntary quit. An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he has left work *voluntarily without good cause* . . .

(Italics ours.) By the provisions of this statute, the employee who voluntarily quits her job for "good cause" is entitled to receive unemployment benefits. We also note that, in its preamble, the Act is "for the benefit of persons unemployed *through no fault of their own*, and that this title shall be liberally construed for the purpose of reducing *involuntary unemployment* and the suffering caused thereby to the minimum."[1] (Italics ours.) Legislative intent

---

[1] RCW 50.01.010 provides:

"Whereas, economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state; involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. Social security requires protection against this greatest hazard of our economic life. This can be provided only by application of the insurance principle of sharing the risks, and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing powers and limiting the serious social consequences of relief assistance. The state of Washington, therefore, exercising herein its police and sovereign power endeavors by this title to remedy any widespread unemployment situation which may occur and to set up safeguards to prevent its recurrence in the years to come. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of. the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own*, and that this title shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum." (Italics ours.)

in these statutes to compensate both the involuntarily unemployed and the voluntarily unemployed for good cause, appears incongruous at first blush.[2] However, we find the legislative intent as variously expressed throughout the Act to be consistent and well reasoned. We have reached this decision by considering the superficially conflicting provisions of the Act in their relation to each other, and in doing so have discovered a harmonious whole.[3]

█ Unemployment benefits will be awarded to the voluntarily unemployed when the reason for unemployment is "compelling".[4] A compelling reason is one which forces or constrains a person to quit her employment against her will.[5] Thus, whether unemployment be involuntary or voluntary for good cause, the Act requires that the reason for the unemployment be external and separate from the claimant. Quite simply, the Act operates generally on a fault principle.[6] A claimant, whether involuntarily unemployed or voluntarily unemployed for good cause, will qualify for benefits under the Act when the fault of the unemployment does not lie with the claimant. Because the Act provides for compensation of those "unemployed through *no fault* of their own" (Italics ours.), benefits cannot be awarded on a comparative fault basis. The courts cannot legislate otherwise.

The fault of unemployment will generally lie in one of three categories: (1) employer fault, (2) third-party fault, and (3) employee fault.

An example of the first category of unemployment fault, employer fault, was touched upon in *In re Anderson*, 39 Wn.2d 356, 235 P.2d 303 (1951), wherein the court at page 361-62, said:

It is undoubtedly true that an employee might be justi-

---

[2] *See In re Bale*, 63 Wn.2d 83, 87, 385 P.2d 545 (1963).

[3] *Publishers Forest Prods. Co. v. State*, 81 Wn.2d 814, 816, 505 P.2d 453 (1973).

[4] *In re Bale*, 63 Wn.2d 83, 87, 385 P.2d 545 (1963).

[5] *State v. Van Auken*, 77 Wn.2d 136, 138, 460 P.2d 277 (1969); *Webster's Third New International Dictionary* 463 (1969).

[6] *Ancheta v. Daly*, 77 Wn.2d 255, 261, 461 P.2d 531 (1969).

fied in voluntarily terminating his employment, if called upon to work for substantially reduced wages or under less favorable conditions; but each phase would be a matter of degree, and the circumstances surrounding each case should certainly be considered by any authority called upon to determine whether or not the employee had good cause to leave his employment.

An employee might well be justified in terminating his employment, if transferred from available work to work of a substantially different nature, or even of the same nature but paying a lower wage or requiring work under less favorable conditions.

Under circumstances of wage reduction or less favorable working conditions, of sufficient degree to compel the employee to quit, the fault of unemployment would lie with the employer, thus constituting good cause for voluntary unemployment and entitling the claimant to benefits under RCW 50.20.050.[7]

Examples of the second category of unemployment fault, third-party fault, are *Ayers v. Department of Employment Security*, 85 Wn.2d 550, 536 P.2d 610 (1975), and *In re Bale*, 63 Wn.2d 83, 385 P.2d 545 (1963), wherein one spouse secured necessary employment in a distant community. In each case, the court concluded the other spouse would be compelled by these circumstances to voluntarily quit employment in order to keep their family together and maintain the marriage relationship.[8] Unemployment was forced upon the claimant by these external circumstances, thereby

---

[7]*See also* RCW 50.20.100 providing:

"Suitable work factors. In determining whether work is suitable for an individual or whether an individual has left work voluntarily without good cause, the commissioner shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, the distance of the available work from his residence, and such other factors as the commissioner may deem pertinent, including state and national emergencies."

[8]*Ayers v. Department of Employment Security, supra* at 552; *In re Bale, supra* at 91.

creating good cause for voluntary unemployment and entitling the claimant to benefits under RCW 50.20.050.[9]

An example of the third category of unemployment fault, employee fault, is *In re Anderson, supra*. Mr. Anderson voluntarily quit his employment rather than accept a 20-cent-per-hour wage reduction and transfer from inside to outside work of the same general type. These employer-imposed changes would mean the loss of an occasional opportunity to be placed on another shift at a 10-cent-per-hour wage increase. The court considered the degree of hardship to Mr. Anderson and concluded that his reason for unemployment was not so great as to compel him to quit against his will. The fault of unemployment being with Mr. Anderson, he was not justified in quitting his employment with the expectation of receiving benefits under the Act.[10] *In re Anderson, supra*, stands for the proposition that good cause within the meaning of RCW 50.20.050 cannot exist where the fault lies with the employee. As stated in the preamble to the Act, where any fault of unemployment lies with the claimant, the claimant is disqualified from receipt of unemployment benefits.

Another example of the third category, employee fault, is the present case, Mrs. Burger cites "low wages and lack of promotional opportunity" as reasons for her voluntary quit. But these reasons are nothing more than personal dissatisfaction. Human ambition for greater material wealth has produced both industry and misery, but seems a characteristic inherent in us all. If fault must be levied, it lies with the claimant and her own internal humanity. The present

---

[9]Another example of the second category of unemployment fault, third-party fault, is *Matison v. Hutt*, 85 Wn.2d 836, 539 P.2d 852 (1975). Union members voluntarily quit employment when their employer became a nonunion house. Under the facts of the case, to continue employment with the nonunion employer would mean the loss of union health, welfare, and pension benefits. Again it was found that entirely external circumstances had compelled the employees to voluntarily quit. Fault being with the union and external to the claimants, their voluntary unemployment was for good cause, entitling them to unemployment benefits under RCW 50.20.050.

[10]*In re Anderson, supra* at 366; see RCW 50.20.100.

case is not one of wage reduction but of acceptable wages which later became unacceptable. We find that the fault of the present unemployment lies with Mrs. Burger, thereby disqualifying her from receipt of unemployment benefits.

It is apparent that no fault can lie with Cowles, for Cowles offered work and delivered all that was promised. Mrs. Burger's wage and advancement with the company were matters of management prerogative. It is not argued that Cowles paid less than a legal minimum wage, nor is it suggested that fault of the unemployment lies with some third party. Mrs. Burger's personal dissatisfaction with low wages, though they be below the prevailing wage in the area, and lack of promotional opportunity is not good cause for voluntarily quitting employment. She is thus disqualified from receipt of unemployment benefits.

We hold that unemployment arising from personal dissatisfaction with low wages and lack of promotional opportunity is voluntary idleness not within the legislative intent as expressly declared in the Act.[11] To hold otherwise would allow an employee with nothing more than the personal conviction that her services are worth more than she

---

[11]*Pfafman v. Unemployment Compensation Bd. of Rev.*, 7 Pa. Cmwlth. Ct. 197, 300 A.2d 295, 297 (1973), held dissatisfaction with wages is not a compelling and necessitous reason for voluntary termination of employment when determining unemployment compensation eligibility. Also see *Morock Ford, Inc. v. Garsaud*, 168 So. 2d 345, 346 (La. App. 1964); *Department of Indus. Relations v. Scott*, 36 Ala. App. 184, 53 So. 2d 882, 884 (1951).

It was held in *Kessler v. Industrial Comm'n of Wis. & Kickhaefer Mfg. Co.*, 27 Wis. 2d 398, 134 N.W.2d 412 (1965), that the action of an employer in promoting persons over the claimant was within the prerogative of management and did not constitute "good cause" for purposes of unemployment benefits. *See Perry v. Brown*, 162 So. 2d 444, 446 (La. App. 1964), for the holding that mere dissatisfaction with wages and working conditions does not constitute "good cause" for leaving employment, where there has been no change in the original employment agreement, and no unfair, discriminatory, or arbitrary treatment by the employer.

is paid, to improperly burden the resources of the Employment Security Department. A contrary holding would also create a convenient claim basis for a free income at public expense to that employee who simply does not want to work. Such an interpretation of the Act would be unrealistic and not in harmony with the declared purpose of the legislature.

Though the Superior Court found the Department's decision awarding unemployment benefits to be "arbitrary and capricious," we are unable to conclude upon our review of the record that the Department did in fact undertake "wilfull and unreasoning action, without consideration and in disregard of facts or circumstances."[12] However, our review still leaves us "with the definite and firm conviction that a mistake has been committed," making the Department's decision to award unemployment benefits to Mrs. Burger "clearly erroneous."[13] We therefore affirm the decision of the Superior Court denying unemployment benefits, but do so upon a different standard of review, that of "clearly erroneous."

In reaching our decision, we have recognized our obligation to consider and grant considerable deference to

---

[12]RCW 34.04.130(6) provides in pertinent part:

"The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

". . .

"(f) arbitrary or capricious."

See also Lillions v. Gibbs, 47 Wn.2d 629, 633, 289 P.2d 203 (1955).

[13]United States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 746, 68 S. Ct. 525 (1948); Ancheta v. Daly, 77 Wn.2d 255, 259, 461 P.2d 531 (1969); and RCW 34.04.130(6) stating:

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

. . .

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order;

existing administrative interpretations of the Employment Security Act, interpretations made within the Department's expertise.[14] But existing Department interpretations fail to correctly apply the fault theory underlying those sections of the Act applicable to the present case. The Department was in error in awarding unemployment benefits to the present claimant when the fault of unemployment was her own.

Citations by the Department to that statute defining "suitable work" for Mrs. Burger are inapplicable.[15] The Department argues that Mrs. Burger voluntarily quit for good cause because low wages made the work unsuitable. However, that definition applies only to the continued qualification of persons presently receiving unemployment benefits and "refusing to accept new work."[16] We are concerned

[14]*Allen v. Employment Security Dep't.*, 83 Wn.2d 145, 151, 516 P.2d 1032 (1973); *Smith v. Northern Pac. Ry.*, 7 Wn.2d 652, 664-65, 110 P.2d 851 (1941); *Davenport, Inc. v. Department of Revenue*, 6 Wn. App. 581, 585-86, 494 P.2d 1376 (1972).

[15]*See* RCW 50.20.110 which states:

"Suitable work exceptions. Notwithstanding any other provisions of this title, no work shall be deemed to be suitable and benefits shall not be denied under this title to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

"(1) If the position offered is vacant due directly to a strike, lockout, or other labor dispute; or

"(2) if the remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; or

"(3) if as a condition of being employed the individual would be required by the employing unit to join a company union or to resign from or refrain from joining any bona fide labor organization."

[16]*See* footnote 15 and RCW 50.20.010 which provides in pertinent part:

"An unemployed individual shall be eligible to receive waiting period credits or benefits with respect to any week in his eligibility period only if the commissioner finds that . . .

". . .

"(3) he is able to work, and is available for work in any trade, occupation, profession, or business for which he is reasonably fitted. To be available for work an individual must be ready, able, and willing, immediately to accept any suitable work which may be offered to him and must be actively seeking work pursuant to customary trade practices and through other methods when so directed by the commissioner or his agents; . . ."

in the present case with initial disqualification from benefits.

Having determined that Mrs. Burger voluntarily quit her job without good cause, and was thereby disqualified from receipt of unemployment benefits, it is unnecessary to answer other arguments by the parties concerning the amount of benefits to which Mrs. Burger might otherwise be entitled.

Judgment of the Superior Court is affirmed, as modified by this opinion.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied August 23, 1976.

Review denied by Supreme Court January 25, 1977.