[No. 43979. En Banc. December 2, 1976.]

COLUMBIA BASIN COLLEGE ASSOCIATION OF HIGHER EDUCATION, *Appellant*, v. BOARD OF TRUSTEES OF COLUMBIA BASIN COLLEGE, *Respondent*.

*Critchlow, Williams, Ryals & Schuster,* by *Rembert Ryals,* for appellant.

*Slade Gorton, Attorney General,* and *John E. Lamp* and *James M. Murphy, Assistants,* for respondent.

WRIGHT, J.—The question herein is whether RCW 28B.52 requires respondent board of trustees to negotiate with the appellant employees of Columbia Basin College to resolve issues which had been scheduled for mutual consideration, but which have not been embodied in a formal policy statement approved and adopted by respondent board of trustees. Also at issue is whether respondent board has the power under that chapter to adopt unilaterally the format for bargaining procedures. Both parties have recognized that the privilege to negotiate does not exist for all items scheduled for consideration, but only exists as to specific policy topics. RCW 28B.52.030 provides in part:

> Representatives of an employee organization, . . . shall have the right, . . . to meet, confer and negotiate with the board of trustees of the community college district or its delegated representative(s) to communicate the considered professional judgment of the academic staff prior to the final adoption by the board of proposed community college district policies relating to, but not limited to, curriculum, textbook selection, in-service training, student teaching programs, personnel, hiring and assignment practices, leaves of absence, salaries and salary schedules and noninstructional duties.

The specific dispute in this appeal is over three agreements and the possible enforceability of these agreements in light of RCW 28B.52.030. Respondent contends that none of these three agreements is currently enforceable. Appellant asserts that at least two of those agreements are still in effect. The facts pertaining to these agreements are as follows: In 1972 appellant and respondent executed a document providing for negotiation procedures to be followed in the event an adoption or change of policies at Columbia Basin Community College were to be considered. Section 2 of the agreement provides:

> If a meeting between the BOARD's designated representative and the spokesman for the ASSOCIATION does not produce a settlement of differences over the proposed

policy or change of policy within a mutually agreeable period of time prior to the meeting for which action was scheduled, the matter shall be submitted to a study committee. Meanwhile the BOARD shall postpone consideration of final adoption of the proposed policy or policy change until a settlement of differences is reached.

In the event the impasse committee failed to reach an accord, section 2D of the 1972 agreement stated that:

If the report of the Study Committee is not acceptable to either the BOARD or the ASSOCIATION, the BOARD may continue to enforce the existing policy; or the BOARD or the ASSOCIATION may take the following action, pursuant to 28B.52.060 RCW:

Twenty-four hours after serving written notice of its intended action to the other party, either party may request the assistance of a committee composed of educators and community college trustees appointed by the Director of the Washington State Board for Community College Education.

In September 1973, a master contract was agreed upon by the parties. This contract provided formal policy statements both as to policies enumerated in RCW 28B.52.030, and to other policies not mentioned in that section. Article 1, section D1 of that agreement contained the following abbreviated negotiations procedure:

(a) All items agreed upon during negotiations and reduced to writing are final and binding upon both parties for the duration of this Agreement and may be modified during the life of this Agreement only by mutual consent of both parties.

(b) Changes in any policies or conditions which are negotiable under RCW 28B.52.030 but are not a part of this Agreement may be changed by the Board at its discretion, however, the Association shall have the right to submit its considered professional judgment to the Board prior to Board adoption.

(c) The Board agrees that ten days prior to the adoption of policy under sub-paragraph (b) it will present its rationale for the change to the faculty.

In 1974 the appellant education association was reelected by a majority vote of the academic employees of the college for purposes of representing such employees in bargaining,

pursuant to RCW 28B.52. In May of 1974, plaintiff education association submitted a draft of a proposed 1974-75 master plan to respondent, urging its consideration. This proposal was responded to by the college president in a letter containing the following language:

Please be advised that, as evidenced by the initial negotiating session, the Board has selected an agent to negotiate in its behalf with the members of the Association's negotiating committee.

The Board, through its negotiating agent, intends to negotiate in good faith to reach an agreement with the Association. The Board further intends to follow the procedures of the Negotiations Law as delineated in RCW 28B.52.030, RCW 28B.52.060, and RCW 28B.52.080, or such other statutory provisions that may govern the conduct of negotiations by the Board of Trustees in its intent to adopt or reaffirm reasonable rules and regulations for the administration of employer-employee relations at Columbia Basin Community College.

Thereafter, the negotiations for the proposed master plan proceeded, and by January of 1975, substantial agreement was reached. At this point, a change of mind occurred on the part of the respondent and a decision was made to rescind all agreements made in contemplation of the proposed 1974-76 contract.

Using certain language in RCW 28B.52.030 as a touchstone, the board concluded that at any time during a negotiation it could halt discussion merely by announcing the position that it did not want to adopt a policy on any of the topics listed in RCW 28B.52.030. The particular language relied on in RCW 28B.52.030 reads:

Representatives . . . shall have the right, . . . to communicate the considered professional judgment of the academic staff prior to the final adoption by the board of proposed community college district policies . . .

The board's interpretation of this statute was communicated to the appellant association. Respondent further asserted that the 1972 and 1973 agreements had both expired and that therefore no currently enforceable agreements re-.

lating to negotiation procedures existed. Thereafter, appellant instituted this action in superior court by filing a complaint seeking a judgment requiring the board to negotiate with the association the terms of the contract for the 1974-75 and 1975-76 school years. Appellant further sought to restrain the respondent from adopting a salary schedule pending the completion of negotiations, and finally sought a declaratory judgment declaring that the negotiation procedures were null and void.

The trial court entered an order which dismissed appellant's cause of action on the basis that the appellant was not entitled to negotiate those items enumerated in RCW 28B.52.030, unless the respondent proposed to adopt a policy or proposed to change an existing policy relating to those enumerated items. The court in its conclusions of law held that both the 1972 and 1973 agreements were "no longer in force or effect". That holding freed the respondent board to adopt its own rules for negotiating future policy enactments and allowed the board to schedule—for discussion only—the issue of teachers' salaries. Appellant appealed to this court.

■ In determining the rights, privileges, and obligations of community college employees to influence policy formation at these institutions, it is helpful to recall that RCW 28B.52, unlike RCW 41.56, is not a collective bargaining act. The board of trustees of these institutions is under no statutory obligation to reach an accord on uncompromised proposals. Impasses are tolerated under the statute (RCW 28B.52.060) and there exist only limited statutory requirements pertaining to settlement procedures. RCW 28B.52.060[1] reads as follows:

> In addition to the authority to convene an impasse committee, the director of the state system of community colleges is authorized to conduct fact-finding and mediation activities upon the consent of both parties as a means of assisting in the settlement of unresolved matters considered under this chapter.
>
> In the event that any matter being jointly considered

[1]In 1975 RCW 28B.52.060 was amended, effective January 1, 1976.

by the employee organization and the board of trustees of the community college district is not settled by the means provided in this chapter, either party, twenty-four hours after serving written notice of its intended action to the other party, may, with the concurrence of the director, request the assistance and advice of a committee appointed by the director. This committee may make a written report with recommendations to both parties within twenty calendar days of receipt of the request for assistance. Any recommendations of the committee shall be advisory only and not binding upon the board of trustees or the employee organization.

The state board for community college education is authorized to make rules governing the operations of impasse committees.

The intent of RCW 28B.52 is primarily to require that both trustees and employees be receptive to ideas and that communication between the two groups remain open. *See* RCW 28B.52.010. Further, RCW 28B.52.200 provides, in part, that:

Nothing in chapter 28B.52 RCW as now or hereafter amended shall compel either party to agree to a proposal or to make a concession, . . .

The 1972 agreement, in section 2 of the negotiation procedures, contained substantially the same machinery for dealing with impasses as the machinery contained in RCW 28B.52.060. The trial court found that these impasse procedures, along with all portions of the 1972 agreement, were rescinded by the parties through mutual agreement. Section 4 of that agreement stated, in part:

This AGREEMENT shall continue in force and effect for an indefinite period unless sooner superseded by a mutual rescission or amendment thereof or unless superseded by future amendments to state law.

We have examined the record and find no basis for this conclusion. Nothing in the later 1973-74 master contract indicates an intent to rescind the earlier 1972 agreement, either by express language or by implication. It is true that the impasse procedures in the 1973 agreement were abbreviated by language stating simply that "the association

shall have the right to submit its considered professional judgment to the Board prior to Board adoption." This reduction in language between the two different agreements is not indicative of an intent to change negotiation procedures or to rescind the 1972 agreement. If anything, there is evidence that the board contemplated that those procedures and the 1972 agreement would remain in force. We believe then, that the parties intended that the 1973 agreement, in allowing the employee representatives to submit their "professional judgment" to the board, meant to continue the force and effect of the 1972 3-tiered settlement procedures contained in the earlier 1972 agreement. In other words, only after the board had received and considered first the judgment and recommendation of the employee representatives, second, the judgment and recommendations of the study committee, and third, the judgment and recommendations of the director's advisory committee, could the board be said to have fully discharged its duty under RCW 28B.52.010, to receive and respond to the data presented to it in the first instance by the employees of the college.

In looking at the 1973 agreement, again one is confronted with a clause requiring a clear intent to revoke or amend before that agreement would become superseded by another document or rescinded altogether. The 1973 agreement states simply in article 7:

> This Agreement shall be and continue in full force and effect until June 30, 1974 and shall be automatically extended for each subsequent one-year period unless either the Board or the Association shall give notice in writing at least 60 days prior to the expiration date of this Agreement or the extended Agreement, that they wish to amend this Agreement, notice to be provided by sending a certified letter to the President of the College or the President of the Association.

The respondent board of trustees only intended that the proposed master plan for 1974-76 be negotiated in good faith and not that it be adopted, nor that the 1972 or 1973 agreements be rescinded.

■ For the above reasons, we find the trial court's conclusions of law Nos. 4 and 5 to be in error, concluding as they did, that both the 1972 and 1973 agreements had been rescinded. As concerns the proposed master plan, it is true that under the act, the board is under no compulsion to adopt any of the policies mentioned in RCW 28B.52.030. Yet, when the board makes a threshold determination, as it did in this case, that it was desirous of discussing a new master plan, it could not begin discussion and then suddenly declare any and all suggestions scheduled for discussion to be unacceptable. Such action was contrary to the announced legislative policy contained in RCW 28B.52.010 and .030.

The appellant's final claim for relief was for the court to restrain the respondent from adopting a salary schedule covering the 1975 summer session until the negotiations process had been completed. That issue is now moot since that salary schedule has been adopted. However, future salary schedules must be negotiated in a manner consistent with existing procedures until such time as new procedures are created by the parties' mutual efforts.

Accordingly, we reverse the decision of the trial court and reinstate the 1972 and 1973 agreements.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

Petition for rehearing granted January 11, 1977.