[No. 7159-6-III. Division Three. March 6, 1986.]

JUDY A. GRIER, *Respondent,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Appellant.*

---

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for appellant.

*Norman R. McNulty, Jr.,* and *Kenneth L. Isserlis* of *Spokane Legal Services Center,* for respondent.

GREEN, C.J.—The Department of Employment Security appeals a superior court order granting Ms. Grier unemployment compensation. Three questions are presented: (1) Did the court err in applying the error of law standard in reviewing the Department's decision? (2) Did Ms. Grier have "good cause" for voluntarily leaving her employment? (3) Did she exhaust all of her reasonable alternatives prior to termination?

Ms. Grier was employed full time by the Spokane YMCA as a child care aide. She earned $3.75 per hour and in addition received medical coverage, vacation and sick leave benefits. On February 3, 1984, Ms. Grier was informed by the program supervisor that effective February 13 her full-time position would be converted to two part-time positions to achieve better coverage at the child care center. As a result, her weekly hours would be reduced from 40 to 27½, she would be responsible for paying a portion of her medical insurance, and her vacation and sick leave benefits would be reduced in half. The changes in hours and benefits were final and there were no other full-time positions available. Ms. Grier's supervisor told her she would understand if Ms. Grier felt the income was insufficient. A few minutes after the discussion, Ms. Grier informed her supervisor she would have to quit to seek full-time work and terminated her employment the same day.

After unsuccessfully searching for full-time work, Ms. Grier's application for unemployment compensation was denied on the basis she quit without good cause. On appeal, the administrative law judge awarded her benefits finding (1) the reduction in wages and benefits were a substantial involuntary deterioration of work-related circumstances and (2) there were no reasonable alternatives to quitting. On appeal, the commissioner reversed on the basis Ms. Grier had failed to preserve the employment relationship by not continuing to work the additional 10 days prior to the deterioration in working conditions. The Superior Court reversed the commissioner and awarded Ms. Grier unemployment compensation commencing on the date the

changes in hours were to have taken effect. This appeal followed.

First, did the court err in applying the error of law standard in reviewing the Department's decision? The Department urges that an agency's decision is subject to review under both the clearly erroneous or arbitrary and capricious standards. Ms. Grier contends that because the issue is legal, not factual, the standard of review is the error of law standard. We find no error.

The arbitrary and capricious and clearly erroneous standards are applied when the issue raised is factual. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). Here, where the dispute is over the inferences drawn from the raw facts and the meaning of the statutory term "good cause", the proper standard of review is the error of law standard. *Vergeyle v. Department of Empl. Sec.*, 28 Wn. App. 399, 401, 623 P.2d 736, *review denied*, 95 Wn.2d 1021 (1981). We keep in mind, however, that although the Department's application of the law is subject to de novo review by the court, substantial weight must be given to its view of the law. *Franklin Cy.*, at 325.

Second, did Ms. Grier voluntarily leave her job with good cause? RCW 50.20.050(3) defines good cause as follows:

> In determining under this section whether an individual has left work voluntarily without good cause, the commissioner shall only consider work–connected factors such as the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness for the work, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, including state and national emergencies. *Good cause shall not be established for voluntarily leaving work because of . . . any other significant work factor which was generally known and present at the time he or she accepted employment, unless the related circumstances have so changed as to amount to a substantial involuntary deterioration of the work factor or unless the commissioner determines that*

*other related circumstances would work an unreasonable hardship on the individual were he or she required to continue in the employment.*

(Italics ours.) In addition, the person must first exhaust all reasonable alternatives prior to termination, unless it would be futile to do so. WAC 192–16–009. The Department contends the reduction in pay was not a substantial deterioration in working conditions and it would not have created an unreasonable hardship on Ms. Grier to have continued her employment. This position is different from that taken by the commissioner of the Department in reversing the decision of the administrative law judge who awarded benefits:

> Upon learning that her employment would be reduced from full–time to part–time at the end of ten days, the claimant abruptly quit her employment. At that time she had no bona fide offer of immediate employment elsewhere. Nor does the record demonstrate any other compelling reason why the claimant had to summarily quit her employment with the petitioner rather than work in her full–time position another ten days. The burden is on the petitioner to establish good cause for voluntarily quitting.
>
> An individual is required to attempt to preserve the employment relationship as long as possible. Under the facts in the instant case, the claimant precipitously and prematurely quit her job with the former employer prior to any deterioration in her working conditions. Moreover, she has shown no compelling reason for so acting. Under all of the circumstances, we must conclude that petitioner has failed in her burden to establish good cause for voluntarily quitting.

This decision implies a deterioration in working conditions would occur and she was denied benefits because she quit prior to that date. A substantial reduction in pay has long been considered a compelling reason for terminating one's employment. *In re Anderson*, 39 Wn.2d 356, 235 P.2d 303 (1951); *Cowles Pub'g Co. v. Department of Empl. Sec.*, 15 Wn. App. 590, 550 P.2d 712 (1976); *see also Scott v. Photo Ctr., Inc.*, 305 Minn. 535, 235 N.W.2d 616 (1975). A 33 percent reduction in Ms. Grier's wages at $3.75 per hour could

not be anything but a substantial deterioration in her working conditions and it would work an unreasonable hardship to continue her employment.[1]

Finding compelling reasons for leaving her employment, did Ms. Grier exhaust all reasonable alternatives prior to termination? WAC 192–16–009. The Department argues a reasonably prudent person would have remained employed part time rather than face the uncertainty of today's job market. Had she not "precipitously and prematurely" quit, the Department reasons, she would have discovered the many advantages of remaining employed by the YMCA. This argument is not supported by authority[2] or the record. In fact, the record indicates Ms. Grier by necessity had to have a full–time position in order to meet her financial obligations. There were no other full–time positions available to her at the YMCA; thus, remaining employed part time was not a reasonable alternative.

The underlying reason for the commissioner's decision was that Ms. Grier "precipitously and prematurely" quit "rather than work in her full–time position another ten days." The Department found no compelling reason for Ms. Grier's actions. In other words, the Department would

---

[1]The Department's reliance upon *Citrigno v. Commonwealth Unemployment Comp. Bd. of Review,* 86 Pa. Commw. 119, 484 A.2d 194 (1984) is misplaced. The employee quit based upon only a temporary reduction in wages during a training period, whereas here it was permanent. In this situation the same Pennsylvania court recognized a permanent reduction in pay constitutes a compelling reason for terminating one's employment. *Ship Inn, Inc. v. Commonwealth Unemployment Comp. Bd. of Review,* 50 Pa. Commw. 292, 412 A.2d 913, 915 (1980). *Beaverton Sch. Dist. 48 v. Employment Div.,* 29 Or. App. 487, 564 P.2d 717 (1977) no longer governs the statutory construction of good cause in Oregon. *See Price v. Employment Div.,* 60 Or. App. 279, 653 P.2d 581 (1982).

[2]The cases cited by the Department are distinguishable. In *Glennen v. Employment Div.,* 25 Or. App. 593, 549 P.2d 1288 (1976), the court found the employee failed to exhaust all reasonable alternatives when she quit her job for domestic reasons without first requesting a leave of absence. In *Maltese v. Unemployment Comp. Bd. of Review,* 190 Pa. Super. 123, 152 A.2d 773 (1959), an employee who quit due to emotional and physical stress without first discussing it with her supervisor or filing a grievance was found to have failed to exhaust all reasonable alternatives.

require that she independently establish good cause for quitting prior to the deterioration in her working conditions. We decline to accept the Department's view.

 The Department's argument that Ms. Grier must independently establish good cause for leaving her job 10 days early ignores the underlying reason for her quitting— to seek full–time employment because of the reduction in her wages. This position is not consistent with the interpretation given the employment security statute. *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 687 P.2d 195 (1984). In *Safeco*, the employee gave her employer a 2–week notice that she was resigning. Safeco let her leave the same day paying her 2 weeks in advance. Based on a long line of departmental decisions, the Department granted her compensation based upon their finding that by letting her leave early, Safeco had discharged her. The Superior Court upheld the Department's decision and the Supreme Court reversed stating:

> Despite the weight given to the administrative determination, the paramount concern of this court is to ensure that the statute is interpreted consistently with the underlying policy of the statute. We believe that the Department's interpretation is inconsistent with the policy of the act and promotes form over substance. We, therefore, do not adopt the Department's interpretation.

(Citation omitted.) *Safeco Ins. Cos. v. Meyering, supra* at 392. The court went on to state the policy of the Employment Security Act requires the Department to analyze the facts of each case to determine what actually caused the employee's separation. In *Safeco* it was the employee's action which brought about the separation. In the case at hand, it was the employer's decision to substantially reduce Ms. Grier's hours which brought about the separation. Had Ms. Grier remained employed another 10 days, she would have been eligible for unemployment compensation. To deny her benefits because she left 10 days early promotes form over substance.

We find the approach taken by the Florida courts per-

suasive. In a factually identical situation, the court in *Knapp v. National Convenience Store,* 404 So. 2d 380 (Fla. Dist. Ct. App. 1981) allowed benefits beginning the effective date of the reduction in hours. The court reasoned the employee was ineligible to receive unemployment benefits during the time in which he voluntarily was unemployed, *i.e.,* prior to the reduction in hours, but should not be disqualified from receiving benefits after the change in hours became effective. This approach is in accord with the policy established in *Safeco* and the purpose of the unemployment compensation laws—to reduce the impact on persons unemployed through no fault of their own. *Cowles Pub'g Co. v. Department of Empl. Sec., supra* at 593. Thus, the Superior Court did not err in granting Ms. Grier benefits from the date the reduction in hours would have taken effect. Ms. Grier is entitled to an award of reasonable attorney fees. RCW 50.32.160.

Affirmed and remanded for determination of reasonable attorney fees.

McINTURFF and THOMPSON, JJ., concur.

Review denied by Supreme Court June 3, 1986.