[No. 8485-0-III.   Division Three.   April 28, 1988.]

STEPHANIE A. WALLACE, *Respondent,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *John Sells, Assistant,* for appellant.

*Kenneth Isserlis,* for respondent.

GREEN, J.—This appeal involves the propriety of the Department of Employment Security's denial of unemployment compensation to Stephanie Wallace. The sole issue is whether Mrs. Wallace voluntarily terminated her employment without good cause.

Mrs. Wallace was employed on a part–time basis by Safeway Stores as a courtesy clerk at the rate of $3.92 per hour from June 6 until June 12, 1986. She resigned her position June 14 informing her employer that she needed to pursue full–time employment and wanted to be available for the Department's dislocated worker program. On her application for unemployment compensation, she stated that she had been working with high school girls who did not have similar financial responsibilities as herself. She further stated that she had been told in her preemployment interview that some courtesy clerks worked up to 30 hours per week, but was not told specifically how many hours she would work. Her claim was denied by the Department on the basis that the reasons furnished were personal. She appealed the Department's determination, stating in the

notice of appeal: "The job was a real disappointment—the salary was $2.40 lower than my former job and I was offered only about 20 hours . . ."

At the subsequent hearing, Mrs. Wallace testified her husband is disabled, receiving $400 per month from Social Security and their daughter receives $50 per month by reason of her husband's disability. Prior to her employment at Safeway, Mrs. Wallace testified she had worked for 7 years at Sigman's Foods as a cashier earning $6.40 per hour and working 30 hours per week. In May 1986 Sigman's closed its doors and Mrs. Wallace applied for and received unemployment compensation until she obtained a position with Safeway as a courtesy clerk. She stated it was necessary to initially take the position as a courtesy clerk because Safeway had a policy of promoting from within. Further, Mrs. Wallace stated she "expected" to attain at least 20 hours per week, but was uncertain how many more hours she would be given. She stated she was surprised when she worked 17 hours the first full workweek. From the conversation with the assistant manager, Mrs. Wallace stated she was told she might be promoted to cashier in the fall assuming business was good and there was a vacancy. She testified she felt very much out of place working with girls half her age and found it hard to explain to previous Sigman's customers who now shopped at Safeway why she was not cashiering. Mrs. Wallace stated as time went on it became emotionally upsetting. Additionally, she stated she was concerned about being available for interviews for other employment. She stated based on the number of hours she was given and the pay, she was unable to meet her financial responsibilities.

The Administrative Law Judge (ALJ) denied Mrs. Wallace benefits and she appealed. The Commissioner affirmed the ALJ's decision which was in turn appealed to superior court by Mrs. Wallace. On review, the Superior Court reversed the Commissioner. The Department appeals.

The sole issue is whether the Commissioner erred in concluding Ms. Wallace voluntarily left her employment without good cause.

An agency's decision is deemed prima facie correct and the burden of proving it to be erroneous rests upon the party attacking it. RCW 50.32.150; *Schuffenhauer v. Department of Empl. Sec.,* 86 Wn.2d 233, 235, 543 P.2d 343 (1975). In reviewing the Department's decision, the court must review findings of fact made by the agency in an effort to determine whether they are clearly erroneous or arbitrary and capricious. Former RCW 34.04.130(6)(e), (f). Review of an administrative tribunal's application of the law is subject to de novo review by the court, although substantial weight must be given to the agency's view of the law. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

The Employment Security Act is designed to temporarily help those persons financially unemployed through no fault of their own. RCW 50.01.010; *Davis v. Department of Empl. Sec.,* 108 Wn.2d 272, 275, 737 P.2d 1262 (1987). Thus, an employee who leaves work voluntarily is disqualified from receiving benefits under the act unless he or she has good cause to quit. RCW 5.20.050(3) sets forth the criteria which must be met in order to establish good cause:

> In determining under this section whether an individual has left work voluntarily without good cause, the commissioner shall only consider work–connected factors such as the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness for the work, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, . . . Good cause shall not be established for voluntarily leaving work . . . because of any other significant work factor which was generally known and present at the time he or she accepted employment, unless the related circumstances have so changed as to amount to a substantial involuntary deterioration of the work factor or unless the commissioner determines that other related circumstances would work

an unreasonable hardship on the individual were he or she required to continue in the employment.[1]

Additionally, the Department's interpretation of this statute requires that the work–connected factor be of such a compelling nature as to cause a reasonably prudent person to leave his or her employment and that he or she first exhaust all reasonable alternatives prior to termination. WAC 190–16–009.

Here, the Commissioner adopted the ALJ's conclusion that Mrs. Wallace's primary motivation in quitting was because of pride or self–esteem with respect to the entry level nature of the position and because she was required to work with persons younger than herself. Additionally, the Commissioner found Mrs. Wallace had not shown she was promised any specific number of hours, that she knew her hours, wages and working conditions at the time she accepted the work, and none of those factors were shown to have changed over the short employment period of 1 week. Further, the Commissioner adopted the ALJ's conclusion that Mrs. Wallace had not established that to continue in the work would have constituted an unreasonable hardship on her. The Department based this conclusion on the fact that Mrs. Wallace would have remained eligible for unemployment benefits at even 20 hours per week and therefore would have realized more income by working and concurrently receiving unemployment benefits than by receiving unemployment benefits alone.

First, Mrs. Wallace attacks the Commissioner's finding that her primary motivation in quitting was because of the entry level nature of the position and the difficulty she

---

[1]A substantial involuntary deterioration of the work factor has been interpreted by the Department to mean "an actual and considerable worsening of the work factor outside the control of the individual". WAC 192–16–009(3)(e). Unreasonable hardship has been interpreted by the Department to mean "a result, not due to the individual's voluntary action, that would cause a reasonable person to leave that employment." WAC 192–16–009(3)(f).

experienced in working with persons younger than herself.[2] She argues the primary reason for quitting was based upon the low wages and lack of promotional opportunities.

In reviewing the alleged error, the court must determine whether the Commissioner's finding is either clearly erroneous or arbitrary and capricious. RCW 34.04.130(6)(e), (f). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Schuffenhauer v. Department of Empl. Sec., supra* at 235; *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969). In applying the clearly erroneous standard, a court may not substitute its judgment for that of the administrative body, but must give deference to the expertise of the administrative tribunal. *Ancheta,* at 260. Under the arbitrary and capricious standard, the administrative agency's action must be found willful and unreasoning, without consideration and in disregard of facts and circumstances. *DuPont–Fort Lewis Sch. Dist. 7 v. Bruno,* 79 Wn.2d 736, 739, 489 P.2d 171 (1971).

The record reflects there were various reasons why Mrs. Wallace quit her job. The record is quite clear, however, that two of the primary reasons she quit were her embarrassment in working with younger women and her disappointment in being paid $2.40 per hour less than her former position. Accordingly, the Department's findings are neither clearly erroneous nor arbitrary and capricious.

However, Mrs. Wallace argues she quit because of low wages, her unrealized expectations of the number of hours she was promised and a lack of promotional opportunities. We agree with Mrs. Wallace that these reasons constitute significant work factors under RCW 50.20.050(3) and may, depending upon the case, constitute good cause

---

[2] We note the ALJ included all of his reasons as "conclusions". Nor did the Commissioner in adopting the ALJ's decision specify which reasons were "findings" rather than conclusions. In order to apply the proper standard of review, we will treat those conclusions which are actually findings as if they had been so designated.

for leaving one's employment. The Commissioner found, however, Mrs. Wallace knew these were the conditions of her employment and concluded they had not substantially deteriorated nor would remaining employed create an unreasonable hardship on her. The finding that Mrs. Wallace knew the conditions of her employment is reviewed under the clearly erroneous or arbitrary and capricious standards. *Franklin Cy.,* at 323. The issue of whether those conditions had substantially deteriorated through no fault of Mrs. Wallace or whether those conditions would have constituted an unreasonable hardship is a mixed question of law and fact and therefore is reviewed under the error of law standard. *Franklin Cy.,* at 325.

A review of the record reflects there is ample evidence to support the Commissioner's finding that Mrs. Wallace knew the conditions of her employment. Mrs. Wallace knew the amount she was to be paid, that the position was of an entry level nature with no immediate promotional opportunities, and, in fact, knew it would be several months before a cashier opening would materialize. By her own admission, Mrs. Wallace was only offered "about 20 hours" per week. Given only Mrs. Wallace's expectation that she expected to work at least 20 hours per week, the Commissioner declined to find a substantial deterioration in her working conditions over her short employment period. We are constrained to agree. Even assuming Mrs. Wallace "expected" to work at least 20 hours per week, 1 week is hardly enough time to determine whether she would continue to work something less than that amount. Moreover, the reduction in hours from 20 to 17 approximates only a 15 percent decrease in pay, not the substantial deterioration in working conditions contemplated by RCW 50.20-.050(3) nor found by the courts.[3]

---

[3]*Tate v. Mississippi Empl. Sec. Comm'n,* 407 So. 2d 109, 111–12 (Miss. 1981) (the court found good cause to leave employment following a 50 percent reduction in wages which was below the child care costs); *Sachs Corp. of U.S.A. v. Rossmann,* 9 Ohio App. 3d 188, 459 N.E.2d 227 (1983) (there was good cause to leave employment where a corporate executive salary remained the same, but job was

Lastly, Mrs. Wallace argues that continued employment at Safeway, contrary to the Department's conclusion, would have caused her unreasonable hardship. She argues, and the Superior Court agreed, that to continue working at Safeway for minimal wages constituted an unreasonable hardship. She asserts that *Grier v. Department of Empl. Sec.*, 43 Wn. App. 92, 715 P.2d 534, *review denied*, 106 Wn.2d 1003 (1986) supports her position. *Grier* is not analogous in that it involved a substantial deterioration in working conditions based upon the *employer's* decision to reduce Ms. Grier's employment from full time to part time.[4] Here, it was not a change in the working conditions which prompted Mrs. Wallace to quit, but her own change of heart.

The Department based its decision that remaining employed would not have constituted an unreasonable hardship because even at 20 hours per week, Mrs. Wallace would have realized more income by working and concurrently receiving unemployment benefits than by receiving unemployment benefits alone. Mrs. Wallace did not assign error to the Department's finding on this issue, either in the hearings below or on appeal. There being no evidence

---

reduced to a formality and the employer refused to give him alternate responsibilities requiring a similar degree of skill and expertise); *Bloomfield v. Employment Div.*, 25 Or. App. 771, 550 P.2d 1400 (1976) (there was good cause to leave employment where a claimant's deteriorating financial situation resulted in de minimis compensation); *Grier v. Department of Empl. Sec.*, 43 Wn. App. 92, 715 P.2d 534 (where the court found good cause to leave employment where the position was reduced from full time to part time and benefits were reduced substantially), *review denied*, 106 Wn.2d 1003 (1986).

These are the same cases relied upon by Mrs. Wallace to support her position that a substantial deterioration in working conditions constitutes good cause for quitting one's position.

[4]In a footnote in her brief, Mrs. Wallace relies on RCW 50.20.080 which states that a claimant is not required to accept employment unless it is suitable. As the Commissioner concluded whether work is suitable goes to the issue of whether or not a claimant has properly refused work who is already receiving unemployment benefits. RCW 50.20.100. *See Cowles Pub'g Co. v. Department of Empl. Sec.*, 15 Wn. App. 590, 598, 550 P.2d 712 (1976), *review denied*, 88 Wn.2d 1001 (1977), where the court rejected just such an argument.

to the contrary, we conclude Mrs. Wallace could have remained employed, received a portion of her unemployment benefits and continued to search for other employment. Thus, we conclude the Commissioner did not err in concluding Mrs. Wallace terminated her position without good cause.

Accordingly, Mrs. Wallace is required to repay the $61 received in conditional benefits. RCW 50.20.190; WAC 192–23–900.

Reversed; the Commissioner's decision is reinstated.

McINTURFF, C.J., and MUNSON, J., concur.