[No. 12864–1–II.   Division Two.   August 27, 1990.]

SHORELINE COMMUNITY COLLEGE DISTRICT No. 7, *Appellant,* v. THE EMPLOYMENT SECURITY DEPARTMENT, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *Edwin J. McCullough, Jr., Assistant,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *M. Geoffrey G. Jones, Assistant,* for respondents.

PETRICH, J.—Shoreline Community College District No. 7 (the College) appeals the ruling of the Commissioner of the Employment Security Department that Richard A. Pelto was eligible to receive unemployment compensation benefits. We affirm.

The parties agree that RCW 50.04.030, which defines the minimum number of hours that an individual must work to qualify for benefits, governs Pelto's eligibility for unemployment compensation. The College contends, however, that the Commissioner incorrectly concluded that Pelto worked for the College at least 680 hours during the 1986 benefit year, as the statute requires.

Shoreline Community College employs full- and part-time instructors. The College does not keep detailed records of the hours its instructors work, nor does it require its instructors to maintain records of the hours they work.

The Shoreline Community College Federation of Teachers, AFL–CIO, represents the full- and part-time teachers at the College. In 1982, the College and the Federation negotiated an "hours allowed" formula, which they agreed the College would use when it reported the hours that a part-time instructor worked to the Employment Security Department. Under that formula, the College estimated that a full-time instructor worked 35 hours a week and it agreed that an academic quarter included 11 weeks. The College and the Federation also agreed that each five-credit course constituted 33 percent of a full-time teaching load. The College concedes that a particular teacher might spend more, or less, time performing his job than the formula

allowed. Shoreline consistently applied the "hours allowed" formula after 1982.[1]

Pelto worked part time as an English instructor at Shoreline in 1986. During the first and second quarters of the calendar year, from January to June 1986, he taught English 102, a 5–credit hour course. During the fourth quarter of 1986, from September to December, Pelto taught both English 101 and English 102. The two courses totaled 10 credit hours. Fifteen credit hours constitutes a full–time teaching load.

The College terminated Pelto's employment in December 1986. Pelto applied for unemployment compensation benefits in April 1987. The College applied the "hours allowed" formula and reported that Pelto worked 513 hours during 1986, 167 hours less than the minimum number of hours required to receive unemployment. Because the College reported that Pelto worked fewer than 680 hours during 1986, the Employment Security Department denied his claim for unemployment benefits. Pelto appealed the denial of benefits. At the administrative hearing, Pelto testified that he did not keep any records of the hours that he worked in 1986. He estimated, however, that he was at school 6 hours a day, Monday through Friday, during the fall quarter and was on campus 4 hours each day, Monday through Friday, during the winter and spring quarters. Pelto calculated that he worked 770 hours during the 1986 benefits year.

The administrative law judge adopted the "hours allowed" formula of the College. Applying the formula, the ALJ determined that Pelto worked 513 hours in 1986. He affirmed the Department's determination that Pelto did not qualify for unemployment because he did not work at least 680 hours during 1986.

---

[1]The formula used for reporting hours is:

"35 Hrs./Wk. x 11 Wks. per Qtr. x ____ (% of full–time load) = Hours Allowed."

Pelto appealed the administrative decision to the Commissioner of the Employment Security Department. The Commissioner set aside the decision of the administrative law judge on June 29, 1988, finding that Pelto's testimony established that he "devoted at least 770 hours to fulfilling his contractual commitments to the College." The Commissioner concluded that Pelto met the requirements of RCW 50.04.030 and was eligible to receive unemployment benefits. The Superior Court for Thurston County affirmed the Commissioner's decision.

Former RCW 34.04.130 governs judicial review of an administrative decision granting or denying unemployment compensation benefits. *Macey v. Department of Empl. Sec.,* 110 Wn.2d 308, 312, 752 P.2d 372 (1988). The statute entitles a "person aggrieved" by a final administrative decision to judicial review. If the findings of the administrative agency are "clearly erroneous in view of the entire record" or "arbitrary or capricious," this court, pursuant to former RCW 34.04.130, may reverse the administrative decision. *Macey v. Department of Empl. Sec., supra.* We apply the "clearly erroneous" or the "arbitrary and capricious" standard directly to the record of the administrative proceedings. *Macey,* 110 Wn.2d. at 311–12. We will not try facts de novo on review. *Macey,* 110 Wn.2d at 313.

A finding is "clearly erroneous" when, although there is substantial evidence to support it, the court, based on the entire administrative record, is left with the definite and firm conviction that a mistake has been committed. *Farm Supply Distribs., Inc. v. State Utils. & Transp. Comm'n,* 83 Wn.2d 446, 449, 518 P.2d 1237 (1974); *Wallace v. Department of Empl. Sec.,* 51 Wn. App. 787, 792, 755 P.2d 815 (1988). The reviewing court must give deference to the expertise of the administrative tribunal. *Wallace v. Department of Empl. Sec., supra.* The action of an administrative agency is "arbitrary and capricious" if it is willful

and unreasoning, without consideration for, and in disregard of, facts and circumstances. *Wallace v. Department of Empl. Sec.*, 51 Wn. App. at 792.

The Commissioner found that Pelto worked 770 hours during 1986. The College did not challenge this or any other finding of the Commissioner. Where a party fails properly to assign error to the findings of an administrative agency, under RAP 10.3(g) and 10.4(c), such findings will be treated as verities on appeal. *Fuller v. Department of Empl. Sec.*, 52 Wn. App. 603, 606, 762 P.2d 367 (1988), *review denied*, 113 Wn.2d 1005 (1989). The Commissioner's unchallenged finding, which is a verity, establishes that Pelto worked 770 hours for the College in 1986. This finding supports the Commissioner's conclusion that Pelto met the minimum hours requirement of and established a "benefit year" under RCW 50.04.030.

Despite the uncontroverted finding that Pelto worked 770 hours in 1986, the College insists that the "hours allowed" formula controls the computation of hours of employment that establish a "benefit year" and entitlement to unemployment compensation because it is contained in a statutorily authorized collective bargaining agreement.

RCW 28B.52.020 and 28B.52.025 authorize the College and its employees, including instructors, to bargain collectively and to execute an agreement that governs the "wages, hours, and other terms and conditions of employment". RCW 28B.52.020(8). The statute does not define the phrase "terms and conditions of employment", but lists as illustrative of "terms and conditions of employment" procedures related to nonretention, dismissal, denial of tenure, and reduction in force. In *Spokane Educ. Ass'n v. Barnes*, 83 Wn.2d 366, 374, 517 P.2d 1362 (1974), the court stated that "[w]hile the subjects of negotiation are not limited to those included in the list, any additional subjects must be related to those which are listed and, . . . they must be of

the same kind."[2] A subject or issue which has only an indirect or uncertain impact on employees and their job security does not qualify as a term or condition of employment and is not subject to collective bargaining. *Spokane Educ. Ass'n v. Barnes,* 83 Wn.2d at 375. *See also International Ass'n of Fire Fighters, Local Union 1052 v. Public Empl. Relations Comm'n,* 113 Wn.2d 197, 200–01, 204, 778 P.2d 32 (1989). Salary, termination, probation, and tenure procedures, paid release time, progressive discipline procedures, and equipment staffing decisions are recognized "terms and conditions of employment". *See Fire Fighters,* 113 Wn.2d at 204–06; *cf. Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.,* 107 Wn.2d 427, 437–38, 730 P.2d 653 (1986); *Columbia Basin College Ass'n of Higher Educ. v. Board of Trustees of Columbia Basin College,* 87 Wn.2d 772, 779, 557 P.2d 852 (1976), *adhered to on rehearing,* 89 Wn.2d 36, 568 P.2d 796 (1977); *Sinnott v. Skagit Vly. College,* 49 Wn. App. 878, 888, 746 P.2d 1213 (1987), *review denied,* 110 Wn.2d 1010 (1988); *Eyre v. Big Bend Comm'ty College,* 36 Wn. App. 154, 155, 672 P.2d 1270 (1983).

Decisions of the federal courts construing the phrase "terms and conditions of employment," as used in the National Labor Relations Act § 8(d), 29 U.S.C. § 158(d), are persuasive authority when construing state labor laws. *Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.,* 107 Wn.2d at 432. The Supreme Court, in *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497–501, 60 L. Ed. 2d 420, 99 S. Ct. 1842, 1849–51 (1979), found that "terms and conditions of employment" include issues that are

---

[2]The court in *Spokane Education Association* interpreted former RCW 28A-.72.030 (Laws of 1969, 1st Ex. Sess., ch. 223, § 28A.72.030), which identified topics open for discussion and negotiation by representatives of a school employee bargaining agent and the school board as part of the process in the adoption of school policies by the board. The Legislature repealed that statute, effective January 1, 1976. The language of the repealed statute, however, also appeared in the antecedent of RCW 28B.52.020 and 28B.52.030, which currently govern collective bargaining among personnel in community colleges.

"plainly germane to the 'working environment'" or that "'vitally affect'" some aspect of the relationship between the employer and the employee. The court in *Seattle First Nat'l Bank v. NLRB*, 444 F.2d 30, 32 (9th Cir. 1971), stated that the phrase "terms and conditions of employment" must be interpreted in a limited sense and that the phrase does not include "every issue that might be of interest to unions or employers." The court found that an issue is a term or condition of employment only if it materially and significantly affects employment or the employee's job security. *Seattle First Nat'l Bank v. NLRB*, 444 F.2d at 33, 35. Thus, "terms and conditions of employment" under the National Labor Relations Board, include seniority rights, pension benefits, a discount on gas that the employer provided to employees for home heating, and in–plant food prices and services that the employer controlled. *Ford Motor Co. v. NLRB*, 99 S. Ct. at 1851; *Hass v. Darigold Dairy Prods. Co.,* 751 F.2d 1096, 1099 (9th Cir. 1985); *Sheeran v. General Elec. Co.,* 593 F.2d 93, 96 (9th Cir. 1979) (citing *Inland Steel Co. v. NLRB,* 170 F.2d 247, 251 (7th Cir. 1948), *cert. denied,* 336 U.S. 960, 93 L. Ed. 1112, 69 S. Ct. 887 (1949) (pension issue), *aff'd sub nom. American Communications Ass'n, C.I.O. v. Douds,* 339 U.S. 382, 94 L. Ed. 925, 70 S. Ct. 674 (1950) (other issues)).

The formula that the College used to report hours worked for purposes of unemployment compensation eligibility, and that it applied in Pelto's case, does not concern "wages, hours, and other terms and conditions of employment" and is not subject to collective bargaining. The method by which benefits qualification is determined has no impact on working environment because it is not applied until after the employee leaves the work environment. Similarly, the formula does not concern job security, or an aspect of the relationship between the employer and the employee, because neither the job, nor the relationship, exists when the formula is applied; the formula becomes relevant only after the termination of employment. We, therefore, reject the College's contention that its hours

allowed formula controls the computation of hours worked, for purposes of unemployment, because it is a term or condition of employment and is subject to the parties' collective bargaining agreement.

Although the hours allowed formula in the parties' bargaining agreement appears to be a reasonable way of governing an employment situation with irregular hours, approving the formula will invite inequitable and inconsistent administration of the State's unemployment benefits programs. The eligibility for unemployment benefits of persons who hold identical positions may vary, based not on the statutory and regulatory schemes that govern the State's compensation program, but on the terms of a particular collective bargaining agreement. Such haphazard results defeat the purpose of the Employment Security Act: to equitably allot the risks of unemployment and systematically accumulate funds during periods of employment, which funds will remedy the suffering unemployment causes each unemployed worker. RCW 50.01.010. Further, it is the express purpose of the Employment Security Department's interpretive regulations to define what constitutes "hours worked" for purposes of computing benefits eligibility. WAC 192–16–002. If the current regulations do not adequately address the reporting problems that irregular hours of employment create, the adoption of a formula to compute hours worked for purposes of benefits eligibility, which will apply statewide, lies more appropriately with the Employment Security Department. RCW 50.12.010; WAC 192–16–002.

Affirmed.

ALEXANDER, C.J., concurs.

WORSWICK, J. (dissenting)—I would reverse the award of benefits. Contrary to the majority's assertion, the formula for determining "hours allowed" *is* related to wages, hours, or other terms and conditions of employment. It is, therefore, a proper subject for collective bargaining under RCW

28B.52.020(8). A decision that this freely negotiated formula is not now binding on Pelto erodes the integrity of collective bargaining.

RCW 28B.52.020(8), defining collective bargaining for academic personnel in community colleges, states in part:

> "Collective bargaining" and "bargaining" mean the performance of the mutual obligation of the representatives of the employer and the exclusive bargaining representative to meet at reasonable times to bargain in good faith in an effort to reach agreement with respect to wages, *hours,* and *other terms and conditions of employment, such as procedures related to nonretention, dismissal,* denial of tenure, and reduction in force.

(Italics mine.) By its very terms, the "hours allowed" formula relates to *hours of employment.* Because of the formula, the college did not keep, or require faculty members to keep, records of the *actual* hours worked. This accommodation benefited both parties: the college was spared the burden of keeping tabs on faculty, and the faculty had maximum flexibility fulfilling its duties to the students and the college. The formula served to quantify faculty performance without formal records or time clocks. That the formula might not be used until an instructor applied for unemployment benefits did not make it unrelated to "hours" in a situation such as Pelto's; precisely the contrary is true.

Computation of hours is one of the "procedures *related* to nonretention [and] dismissal". (Italics mine.) RCW 28B.52.020(8). If a statute fails to define a term, the term is given its ordinary meaning. *Davis v. Department of Empl. Sec.,* 108 Wn.2d 272, 277, 737 P.2d 1262 (1987). "Related" means "having relationship : connected by reason of an established or discoverable relation". *Webster's Third New International Dictionary* 1916 (1986). An application for unemployment compensation is a "procedure related to nonretention," and a formula that comes into play when nonretention occurs is "related" to that procedure.

Even the Department's regulation defining what hours should be reported on quarterly wage reports supports the

propriety of the formula used here. RCW 50.12.070 requires employers to report "the hours worked by each worker." WAC 192–16–002(4) further defines "hours worked":

> Employees on salary. If a salaried employee works irregular nonstandard weeks, he or she shall be reported for the actual number of hours worked. *In the absence of reliable time figures,* a full–time salaried employee will be reported for 40 hours worked for each week in which any of his or her duties are performed.

(Italics mine.) Far from requiring that employers report precise numbers of hours worked in every instance, this regulation anticipates that there will be situations, such as Pelto's, in which detailed records are not kept. An alternative can then be used to determine the number of hours worked. The formula agreed on by the union and the college in this case is an alternative within the spirit of the regulation.

The majority argues that use of this formula to resolve unemployment compensation claims will "invite inequitable and inconsistent administration of the State's unemployment benefits programs." Majority, at 73. Just the opposite is true. Such a formula, negotiated through collective bargaining, applies equally to similarly situated workers. Inconsistent and inequitable results will be reached when, as here, an individual can override the negotiated formula by testifying that he actually worked a different number of hours.

The formula is binding on Pelto because it was a proper subject of collective bargaining and was freely negotiated by the union and the college. *In re Employees of Buffelen Lumber & Mfg. Co.,* 32 Wn.2d 205, 201 P.2d 194 (1948); *Antinore v. State,* 49 A.D.2d 6, 371 N.Y.S.2d 213 (1975), *aff'd,* 40 N.Y.2d 921, 358 N.E.2d 268, 389 N.Y.S.2d 576 (1976). In *Buffelen,* our Supreme Court determined that a union–negotiated vacation agreement was binding on the claimant union members so that they were "voluntarily unemployed" during a plantwide vacation closure.

In *Antinore,* the reviewing court determined that the terms of a valid collective bargaining agreement bind a

public employee even when the employee disapproves of the agreement negotiated by his representative. *Antinore,* at 10–11 (provision for binding arbitration in disciplinary proceedings for civil service employees held valid; because of provision negotiated by employee's collective bargaining agent, employee waived due process and equal protection rights). As the *Antinore* court stated:

> The fact that this plaintiff did not himself approve the agreement negotiated by his representative and now disclaims satisfaction with one aspect of the agreement makes it no less binding upon him. Labor relations involving any sizeable group cannot be expected to proceed only with the consent of each member of the group. Orderly process requires that agreements be made and complied with even in the face of minority dissent or disapproval.

*Antinore,* at 10–11. Like the plaintiff in *Antinore,* Pelto wants to exempt himself from a valid provision of a duly negotiated collective bargaining agreement. He should not be allowed to do so. I dissent.

Review granted at 116 Wn.2d 1001 (1991).