[No. 45107. En Banc. March 30, 1978.]

DONALD L. LEHMANN, ET AL, *Appellants,* v. THE BOARD OF TRUSTEES OF WHITMAN COLLEGE, ET AL, *Respondents.*

*McAdams & Schacht* and *Ronald K. McAdams,* for appellants.

*Williams & Golden,* by *Robert J. Williams* and *Eugene T. Golden,* for respondents.

BRACHTENBACH, J.—Plaintiff husband (plaintiff) was dismissed from his tenured position as a professor at Whitman College. Plaintiff sued for reinstatement and for $2 million damages for libel and damage to his professional standing. The libel claim was dismissed upon defendants' summary judgment motion and was not appealed. The trial court upheld the dismissal of plaintiff, denied damages and dealt with other details which we will discuss later. In essence, we affirm.

Plaintiff's difficulties began when two Whitman female students reported to the acting college president (president) that plaintiff had made sexual advances toward them. A similar charge had been made a year earlier but no action was taken after the acting president discussed the reported incident with plaintiff. At that time plaintiff was cautioned

to be extremely careful in his dealings with his female students.

The president wrote plaintiff, citing the faculty code which would have been violated if the reports were true, set up an appointment and advised plaintiff of his right to have another person present. The meeting was held with plaintiff, the president and the dean of the faculty. Thereafter the president wrote plaintiff outlining charges of sexual advances to students, teaching deficiencies and improper behavior with respect to faculty members and the college administration. Plaintiff was suspended immediately with pay, pending proceedings.

An advisory investigatory committee of the faculty, composed of the five senior faculty members, was appointed pursuant to the provisions of the college's faculty code. It held 21 sessions and heard testimony from 20 persons. That committee recommended pursuit of the dismissal proceedings based upon evidence of sexual advances not only toward female students, but female staff and faculty members and wives of faculty or staff members. Teaching deficiencies and improper behavior toward the faculty and administration also were found substantial.

Again, pursuant to the faculty code, the charges were referred to the academic council. This is a council created not by the defendant board of trustees but by the faculty itself. Plaintiff was advised in writing of his right to appear before that council and to request a delay for preparation. Further, he was advised that the council chairman would inform him of his procedural rights before the council. Plaintiff made a written response to the charges. As to the sexual misconduct, he asserted that he could recall no specific instances of this type of conduct and denied that such existed. However, he indicated that he had an alcohol problem which caused lapses of memory and that during these lapses such conduct could have occurred. He stated, "If in fact it did, however, it is my position that it was a result of my alcoholism problem." He indicated that he had sought professional help and had stopped drinking. In

addition, he made denials or gave explanations about the other charges.

The academic council held hearings for 9 days, the transcript of which is 1,249 pages. Plaintiff's attorney was present during all the proceedings; plaintiff was present for eight of the nine hearings. The plaintiff testified, presented witnesses and his attorney cross–examined witnesses presented by the college. The council rendered a 7–page report to the president outlining the charges, the plaintiff's responses and its conclusions. Its ultimate recommendation was:

> The Council finds that Professor Lehmann did in fact engage in acts of sexual misconduct over an extended period of time. In the judgment of the Council, this constitutes behavior "reflecting seriously upon the College or upon the character and reputation of the person involved." On this basis, the Council recommends dismissal with one year's severance pay equivalent to his 1973–74 salary without fringe benefits. (The Council feels that this severance pay would be an act of generosity on the part of the College to a senior faculty member with family responsibilities and would help to ease his transition to other employment.)

The council's recommendation was confused, however, by additional comments which will be discussed later.

The academic council report was acted upon by the board of trustees of the college. They dismissed plaintiff and continued monthly salary payments for 1 year so long as plaintiff did "not take action against Whitman College through publicity or through legal process." When plaintiff sued defendants, the salary was terminated. The trial court denied damages and upheld the dismissal, but reinstated the salary. Alternatively, it allowed the board to refer the matter back to the academic council as will be discussed hereafter.

Plaintiff's contentions are (1) violation of his contractual rights and (2) denial of constitutional due process.

■ The first matter is to determine the contractual procedures applicable to dismissal of tenured faculty. The evidence established that the college had adopted the principles and procedures embodied in the 1940 Statement of Principles on Academic Freedom and Tenure and the 1958 Statement on Procedural Standards in Faculty Dismissal Proceedings, both as adopted by the American Association of University Professors (AAUP). *Academic Freedom and Tenure,* pages 33–38, 40–45 (L. Joughin ed. 1967). The court entered a finding that these procedures had been adopted by Whitman College and that finding is not challenged. Therefore, those procedures are controlling.

Plaintiff contends that defendants did not follow AAUP procedures. Apparently plaintiff has abandoned any claimed right of reinstatement. His proposed findings of fact include a finding that reinstatement would be unworkable. No error is assigned to the failure of the trial court to make that finding. Consequently, our task is limited to passing on plaintiff's complaints concerning the procedural aspects of his dismissal.

■ The court concluded that defendants properly followed AAUP procedural standards as to plaintiff's dismissal. While entitled a conclusion of law, it is a mixed finding of fact and conclusion. It implies a factual determination sufficient to treat it as a mixed finding and conclusion and we do so. *Hanson v. Lee,* 3 Wn. App. 461, 476 P.2d 550 (1970). It was supported by substantial evidence and we are bound by it.

In his brief, plaintiff alleges factual violations of the AAUP procedures. However, a 7–page, single–spaced digest of alleged violations does not contain a solitary reference to the statement of facts. Such references are required. RAP 10.3(a). While the brief is deficient in this regard, other parts of the brief do reference the record. Consequently, we have reviewed that record, including the transcript of the proceedings before the academic council. Contrary to plaintiff's objections, there is strong evidence to support the

finding of the court that the AAUP procedures were complied with.

Plaintiff was advised in writing of the charges and he responded in writing. He was granted a delay for preparation. He was given the right to present evidence and to cross–examine all witnesses through his counsel. His counsel was present at all times. Prior to the academic council hearing, counsel was given an oral summary of the testimony before the advisory investigatory committee. Prior to the council hearing he was furnished with the names of the witnesses. Hearsay evidence was permitted as contemplated by the AAUP rules. Plaintiff made no request to elicit further evidence from the hearsay witnesses nor to have a delay to develop contradictory evidence.

In short, there was substantial evidence to support the trial court's conclusion that the applicable procedures were followed, that the board of trustees gave full consideration to the academic council report and that the board did not act arbitrarily or capriciously.

■ Plaintiff's second argument is that he is entitled to constitutional due process under the Fourteenth Amendment. Whitman College is a privately owned and operated institution. The Fourteenth Amendment prohibits deprivation of life, liberty or property without due process by any *state*. In contrast, private action is immune from the restrictions of the Fourteenth Amendment.

> While the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is "private," on the one hand, or "state action," on the other, frequently admits of no easy answer.

*Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349, 42 L. Ed. 2d 477, 95 S. Ct. 449 (1974).

Here there is nothing cited in the plaintiff's brief, and we have found nothing in the record, to support a claim that the actions of this private institution involve "state action."

We do not foreclose the possibility that there may be sufficient intertwining of private institutions and governmental functions to constitute state action such as contemplated by the Fourteenth Amendment. *See, e.g., Buckton v. National Collegiate Athletic Ass'n,* 366 F. Supp. 1152 (D. Mass. 1973). There simply is no proof in this case.

The only remaining question is the propriety of the remedy granted. As noted above, the academic council's recommendation and the action taken thereon by the board of trustees created some confusion. The academic council recommended dismissal, but went on to state that there was some possibility of personal problems of a mitigating nature and that plaintiff was willing to undergo psychiatric treatment. The council *suggested* that he be asked to undergo psychiatric evaluation to determine whether some course of action other than dismissal was either warranted or feasible. It *suggested* a leave of absence to undertake such treatment if there were a favorable prognosis. The board of trustees refused to adopt this suggestion of treatment as a condition of termination. Additionally, the board conditioned the council's 1–year salary award upon plaintiff not suing the college or publicizing the matter, neither of which was recommended by the academic council.

The problem arises because the AAUP procedures seemingly require the board to either sustain the decision of the academic council in its entirety or refer the entire proceedings back to the council for reconsideration. Based on this provision of the AAUP procedures, the trial court reinstated the unconditional salary award and upheld the board of trustees' refusal to adopt treatment as a condition of termination. However, the trial court further gave the board the option of referring the entire proceedings back to the council.

Reinstatement of the salary award, without conditions, was proper. Without referral back, the board of trustees was bound by the council's firm recommendation of unconditioned salary. The board chose not to refer the matter

back and the trial court cannot now order the board to do so.

In addition, the trial court's judgment inserting the alternative of referral back to determine the council's exact recommendation was not supported by the evidence or the finding. The members of the academic council testified that the firm recommendation was dismissal and that the alternative resolution of treatment was only a suggestion. The court found that the board considered that suggestion to be unworkable, that the council did not expect the matter to be referred back if the board did not accept this alternative and that this was not in violation of AAUP procedures. This finding is supported by substantial evidence. The evidence simply does not support the trial court's conclusion of a referral back alternative.

With the exception of the deletion of the referral back alternative, the judgment is affirmed in all respects.

WRIGHT, C.J., ROSELLINI, HAMILTON, UTTER, HOROWITZ, DOLLIVER, and HICKS, JJ., and HENRY, J. Pro Tem., concur.

Petition for rehearing denied May 9, 1978.