[No. 52605–2.   En Banc.   December 18, 1986.]

GREEN RIVER COMMUNITY COLLEGE DISTRICT NO. 10, *Appellant,* v. THE HIGHER EDUCATION PERSONNEL BOARD, ET AL, *Respondents.*

428

*Kenneth O. Eikenberry, Attorney General,* and *Joel M.*

*Greene, Assistant,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Senior Assistant,* for respondent Higher Education Personnel Board.

*Dean A. Floyd,* for respondent Washington Federation of State Employees.

*Kenneth O. Eikenberry, Attorney General,* and *Rick D. Woods, Assistant,* on behalf of Highline Community College, amici curiae for appellant.

UTTER, J.—During labor negotiations the Green River Community College committed acts which were alleged to comprise an unfair labor practice. The Higher Education Personnel Board (HEP Board) held the acts were in fact an unfair labor practice. This decision was appealed by the college to the Superior Court, which dismissed as moot the substantive portion of the college's appeal. The court also remanded the HEP Board decision awarding attorney fees for reconsideration. The parties then sought appellate review. The Washington Federation of State Employees (WFSE) acted as an intervenor in the proceedings and appeals the trial court's remand of the award of attorney fees. We reverse the trial court on the issue of mootness, affirm the unfair labor practice decision, and uphold the award of attorney fees.

WFSE was designated the exclusive bargaining representative of the college classified employees in accordance with RCW 28B.16.100(11). On July 19, 1976, a dispute arose between the parties concerning the issue of paid release time to negotiate a proposed contract. Employee members of a negotiating committee receiving paid release time are able to participate in negotiations during working hours and receive their normal compensation. On December 8, 1976, the HEP Board's labor relations specialist conducted a meeting at the college following receipt of a request from WFSE for mediation of an impasse. The HEP Board specialist concluded that, pursuant to WAC 251–14–100, the

request for mediation was premature, as there had been no collective bargaining impasse over articles in a proposed contract, but rather an impasse over an issue that concerned the arrangements for negotiations.

On February 16, 1977, WFSE filed an unfair labor practice charge with the HEP Board over the college's alleged refusal to negotiate on the release time issue. In the interim, on May 16, 1977, WFSE requested the HEP Board to schedule an arbitration hearing. The college filed suit in Thurston County Superior Court requesting a declaratory ruling on the authority of the HEP Board to engage in arbitration. The judge rendered an opinion upholding the validity of WAC 251-14-100 and -110, and an order to that effect was entered. The trial court decision was affirmed by this court in *Green River Comm'ty College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 622 P.2d 826 (1980), *modified*, 95 Wn.2d 962, 633 P.2d 1324 (1981).

The matter went to arbitration under case No. HEPB-RA 9. Following the hearing, on August 30, 1978, the HEP Board issued an order dismissing the request for arbitration pursuant to WAC 251-14-110(1) because the dispute did not constitute a collective bargaining impasse, as the parties were deadlocked over a *prenegotiation* dispute. Nonetheless, the HEP Board proceeded to enter findings of fact, conclusions of law, and an order to the parties to commence bargaining immediately in good faith at reasonable times.

The parties failed to come to an agreement and WFSE filed a second unfair labor practice charge with the HEP Board in November 1978. On August 15, 1979, the HEP Board found the college guilty of an unfair labor practice for failing to bargain in good faith on the issue of paid release time. The HEP Board ordered the college to commence bargaining immediately in good faith and at reasonable times, and to pay WFSE's attorney fees and litigation costs. Following entry of the decision, the parties negotiated a contract which is in effect at the present time. The college did not, however, pay WFSE's litigation costs as ordered by the HEP Board.

The college filed a petition for review with the Superior Court on September 10, 1979. The trial court declined to reach the merits of the unfair labor practice charge, ruling that all issues would be moot if it were not for the issue of the award of attorney fees to WFSE. The trial court remanded the fee issue to the HEP Board for reconsideration of its award in light of *State ex rel. Wash. Fed'n of State Employees v. Board of Trustees,* 93 Wn.2d 60, 605 P.2d 1252 (1980). The present appeals were then filed with the Court of Appeals, which transferred them to this court in accordance with RAP 4.3.

■ As a preliminary matter, WFSE notes that the college's brief does not comply with the rules of appellate procedure in that it fails to assign error to the administrative agency's findings of fact or conclusions of law. For this and other alleged irregularities, WFSE moves to dismiss the college's appeal or to strike the college's brief. Generally, an appellate court will only review claimed error included in an assignment of error. *See Lehmann v. Board of Trustees,* 89 Wn.2d 874, 576 P.2d 397 (1978). Scrupulous observance of RAP 10.3 and RAP 10.4 would require the college to cite to the HEP Board's findings and conclusions. However, under RAP 1.2(a) a "'technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such a review. . . . [W]here the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief, [this court] will consider the merits of the challenge.'" *State v. Williams,* 96 Wn.2d 215, 220, 634 P.2d 868 (1981) quoting from *Daughtry v. Jet Aeration Co.,* 91 Wn.2d 704, 710, 592 P.2d 631 (1979). The nature of the challenge is clear and the challenged findings are, in fact, set forth in the college's brief and we will turn to the merits.

Four issues are raised in this appeal: (1) Whether the subsequent negotiations and contract between the parties rendered the HEP Board's unfair labor practice finding moot; (2) If not, what standard of judicial review applies to the agency's findings and conclusions; (3) Under that

standard, was the HEP Board correct in holding that the college committed an unfair labor practice in refusing to bargain in good faith over the issue of paid release time; (4) Whether the HEP Board abused its discretion in awarding attorney fees to WFSE.

MOOTNESS OF THE UNFAIR LABOR PRACTICE CHARGE

Both the college and the HEP Board argue that the trial court erred in dismissing as moot that portion of the HEP Board's order finding that the college had committed an unfair labor practice. Following entry of the HEP Board's order, the college paid for some release time for negotiations over the contract currently in effect.

■ Both the HEP Board and the college analogize to a well established body of federal labor law, and contend that an unfair labor practice appeal is not rendered moot by the passage of time or the subsequent compliance of the employer. We agree. In *State ex rel. Wash. Fed'n of State Employees v. Board of Trustees, supra,* we held that Washington's Public Employees' Collective Bargaining Act, RCW 41.56, is substantially similar to the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169 (1976) (Act of July 5, 1935, Pub. L. No. 74–198, 49 Stat. 449, as amended). While not controlling, decisions under the NLRA are persuasive in construing state labor acts which appear to be based on or are similar to the federal act.

In *Massillon Pub'g Co. v. Cleveland Newspaper Guild, Local 1,* 215 N.L.R.B. 380 (1974), the NLRB rejected an employer's argument that subsequent execution of a collective bargaining agreement mooted the issue of an unfair labor practice filed by a probationary employee who was excluded by the new agreement. In that case, the board strongly stated that it is entrusted with the protection of public rights under the NLRA and not merely with the settlement of private disputes.

[I]t is well settled that an employer's execution of a contract with a union with which it previously refused to bargain in violation of the Act [the NLRA] does not

render the issue of such violation moot. [*Southern Tours, Inc. v. Amalgamated Transit Local Div. 1326,* 167 N.L.R.B. 363 (1967).] This principle is premised on the theory that the Board does not oversee the settlement of private disputes but, rather, is entrusted with the responsibility of protecting public rights under the Act. These rights are not protected, and the effects of the unfair labor practices found are not expunged, merely because of a private settlement of the dispute by the parties, which may or may not serve to remedy the adverse effect on the Section 7 rights of the employees.

(Footnote omitted.) 215 N.L.R.B. at 380.

The HEP Board plays a role analogous to the NLRB. RCW 28B.16.230 requires the HEP Board to apply the unfair labor practice provision of RCW 41.56.140–.190 to classified employees of higher education institutions as part of a detailed statutory scheme to promote peaceful public employment relations. *Public Employment Relations Comm'n v. Kennewick,* 99 Wn.2d 832, 836–37, 664 P.2d 1240 (1983). A violation of such public statutory rights is not cured simply because the offending party later conforms its conduct to the statutes.

█ The NLRB cases find support in a long line of United States Supreme Court cases holding that an employer's compliance with an NLRB order does not render the cause moot. *See, e.g., NLRB v. Raytheon Co.,* 398 U.S. 25, 26 L. Ed. 2d 21, 90 S. Ct. 1547 (1970). Numerous cases in the Fifth, Seventh, Eighth, Ninth, and District of Columbia Circuits apply these United States Supreme Court decisions holding that an employer's compliance with an NLRB order does not render an unfair labor practice case moot. *See, e.g., NLRB v. Great Western Coca–Cola Bottling Co.,* 740 F.2d 398, 406 (5th Cir. 1984). Our decision today is consistent with analogous Washington law on mootness in the context of other laws designed for the benefit and protection of the public. *See, e.g., State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 312, 553 P.2d 423 (1976), *appeal dismissed,* 430 U.S. 952, 51 L. Ed. 2d 801, 97 S. Ct. 1594 (1977). The college's

compliance with the HEP Board's order does not render the unfair labor practice finding moot.

## Standard of Judicial Review of HEP Board's Findings and Conclusions

Although the college and WFSE currently agree that *Public Employment Relations Comm'n v. Kennewick, supra,* sets forth the scope and standard of judicial review to be applied in this case, we disagree. *Kennewick* dealt expressly with the scope of review to be accorded in an *enforcement* proceeding brought pursuant to RCW 41.56-.190. An enforcement proceeding has not been brought in the case at bar and an extension of the *Kennewick* rule is therefore inappropriate.

█ The college has appealed from an adverse decision rendered by the HEP Board in a contested case. The HEP Board is not among the agencies set forth in RCW 34.04-.150 as exempted from the administrative procedure act, RCW 34.04. RCW 34.04.010(3) defines "contested case" as "a proceeding before an agency in which an opportunity for a hearing before such agency is required by law or constitutional right prior or subsequent to the determination by the agency of the legal rights, duties, or privileges of specific parties." RCW 34.04.130 provides that any person aggrieved by a final decision in a contested case is entitled to judicial review thereof only under the provisions of the administrative procedure act. The scope of review section is codified at RCW 34.04.130(6).

In *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983), we clarified which statutory standard applies to the various questions encountered in judicial review of agency actions. We are presented here with a mixed question of law and fact: the application of the unfair labor practice statute to the course of negotiations between the college and WFSE. Under *Sellers,* the court reviews mixed questions of law and fact on two levels. The factual component is reviewed under the clearly erroneous standard. The legal component

is then reviewed under the "error of law" standard. As long as the agency "applied the correct law to facts which were not clearly erroneous," its decision should be upheld. *Sellers*, at 329.

## THE UNFAIR LABOR PRACTICE CHARGE

In HEPB–ULP 16, the HEP Board examined the "declaration of purpose" sections of the State Higher Education Personnel Law (RCW 28B.16.010) and the Public Employees' Collective Bargaining Act (RCW 41.56.010).

> The interests of state institutions of higher education and the employees of those institutions will be furthered by the enactment of a system of personnel administration designed specifically to meet particular needs in connection with employer–employee relations in the state institutions of higher education. The general purpose of this chapter is to *establish a system of personnel administration for the institutions of higher education in the state which is based on merit principles and scientific methods,* and which governs the appointment, promotion, transfer, layoff, recruitment, retention, classification and pay plans, removal, discipline, and welfare of employees covered under this chapter.

(Italics ours.) RCW 28B.16.010. The HEP Board concluded that the intent of the Legislature expressed in those statutes was to create a uniform system of personnel administration in the state institutions of higher education. Having found the prevailing practice in Washington state government and state higher education institutions includes the systemwide practice of providing release time, the HEP Board concluded that the college breached its duty to "meet at reasonable times, to confer and bargain in good faith" through its "arbitrary and unilateral rejection of any consideration of 'release time' without loss of pay for employee members of the bargaining team." HEPB–ULP 16, conclusion 5, at 6. The HEP Board went on to state that:

> In a pre–negotiation agreement wherein the parties mutually agree to the format and the conduct of the bargaining process, determination of what constitutes "rea-

sonable times" should be the province of the parties. In determining reasonableness, the parties are obliged to consider both the operational welfare of the institutions and the rights and expectations of employees as intended by the Legislature and as expressed by statute.

Conclusion 6, at 7.

The college raises a number of challenges to the HEP Board's ruling. Its first argument is that the HEP Board exceeded the scope of its statutory authority in ruling on the issue of release time. It urges that the HEP Board infringed upon the express legislative grant of authority to the boards of trustees of community colleges to fix duties (RCW 28B.50.140(3)) and to adopt policies on granting leaves for employees (RCW 28B.50.551). Thus, the college argues for an extremely restrictive interpretation of the HEP Board' statutory authority under RCW 28B.16.100 to oversee the conduct of collective bargaining between a community college and its classified employees. Such a restrictive approach is unwarranted.

▮ In the context of this same dispute, we previously clarified and underscored the HEP Board's power and authority to arbitrate impasse issues arising from the collective bargaining process. *Green River Comm'ty College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 622 P.2d 826 (1980), *modified*, 95 Wn.2d 962, 633 P.2d 1324 (1981). The HEP Board was accorded authority over both the conduct and the obligation of state institutions of higher education to bargain collectively in good faith through inclusion in RCW 28B.16.230 of the unfair labor practice provisions of the Public Employees' Collective Bargaining Act. RCW 41.56.140–.190. Under RCW 41.56.140(4), "[i]t shall be an unfair labor practice for a public employer . . . [t]o refuse to engage in collective bargaining." Under RCW 41.56.160, the HEP Board is directed to prevent unfair labor practices. The HEP Board's construction of the statute it has been charged to administer is entitled to great weight. *Green River College*, at 117–18; *Sellers*, at 325–26.

In *Green River College*, at page 119, we examined the

legislative history of RCW 28B.16 and the statutory mission of the HEP Board, and said:

[C]ommunity colleges have few management rights under any circumstances. Community college districts are administered under the supervisory regulations of both the State Board for Community College Education and the Higher Education Personnel Board. *Greenwood v. State Bd. for Community College Educ.*, 82 Wn.2d 667, 513 P.2d 57 (1973); *Centralia College Educ. Ass'n v. Board of Trustees*, 82 Wn.2d 128, 508 P.2d 1357 (1973); *Cunningham v. Community College Dist. 3*, 79 Wn.2d 793, 489 P.2d 891 (1971). Even the terms of employment for classified personnel in community colleges are governed by the specific provisions of RCW 28B.16.101. Although the statute provides that local colleges may *initially* exercise discretion on certain issues, that same provision grants the HEP Board "audit and review" powers. RCW 28B.16.101. Thus, any "management rights" of the colleges are subject to review by the HEP Board.

(Italics ours.)

In fulfilling its duty to regulate the practice of collective bargaining, including designating which terms of negotiation are to be the subject of mandatory negotiation, the HEP Board has acted well within the scope of its statutory authority.

The college next contests the HEP Board's finding that the college failed to bargain in good faith on the release time issue, as well as the finding that provision of paid release time constitutes the prevailing practice in Washington state government and in Washington state higher education institutions. The college offers as evidence of its bargaining, letters to WFSE in which the college offered a number of negotiation options, none of which included a provision for any consideration of paid release time. Applying the standard of judicial review for agency factfinding set forth in *Sellers,* a review of the entire record reveals that the agency's findings were *not* clearly erroneous, in that they do not leave the definite and firm conviction that a mistake has been committed.

■ The HEP Board's characterization of the actions of the college as an unfair labor practice present a mixed question of fact and law: the application of RCW 41.56.140–.190 to the facts as found. Although the reviewing court applies the "error of law" standard to agency conclusions of law, a heightened degree of deference is appropriate where the agency's construction of a statute is within the agency's field of expertise (*Sellers*, at 325–26), as in the instant case. Here, the HEP Board examined the relevant statutes and reasonably concluded that the college's outright refusal to even consider the option of paid release time, in the face of a statewide prevailing practice, constituted an unfair labor practice. The HEP Board was fulfilling its obligation to further the legislative purpose of "*providing a uniform basis* for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers." HEPB–ULP 16, conclusion 6, at 7, quoting RCW 41.56.010.

The college also argues that granting release time with pay may be an unconstitutional gift of public funds in violation of Const. art. 8, § 5. In the alternative, it argues that the granting of release time may constitute an unfair labor practice. The HEP Board rejected these arguments, as do we. Whatever lingering doubt there may have been with regard to these issues was put to rest in the controlling case of *State ex rel. Graham v. Northshore Sch. Dist. 417*, 99 Wn.2d 232, 662 P.2d 38 (1983).

### HEP Board's Award of Attorney Fees to WFSE

■ The HEP Board ordered the college to pay WFSE's attorney fees and costs. At the time that order was made, the HEP Board's authority to award litigation expenses under RCW 41.56.160 was not yet settled. Since then, we have held that it is appropriate to authorize awards of attorney fees to best effectuate the policies behind collective bargaining, and we articulated the test as follows:

[A]n allowance [of attorney fees] is not automatic, but should be reserved for cases in which a defense to the unfair labor practice charge can be characterized as frivolous or meritless. The term "meritless" has been defined as meaning groundless or without foundation.

*State ex rel. Wash. Fed'n of State Employees v. Board of Trustees,* 93 Wn.2d 60, 69, 605 P.2d 1252 (1980). In *Board of Trustees,* we emphasized two factors in making this determination: (1) the entire course of dealing between the parties, and (2) the good faith and honest belief of the college's administration in the advice of the college's assigned Attorney General, and the college's reasonable reliance on that advice.

*Board of Trustees* involved two consolidated mandamus actions brought against the boards of trustees of Central Washington University and Spokane Community College. The HEP Board ruled in both cases that the colleges had committed unfair labor practices, and routinely awarded attorney fees to the prevailing parties. The award of attorney fees against Central was sustained. We noted that the college had consistently engaged in arbitrary conduct throughout its course of dealings with WFSE. We did overturn the award of attorney fees against Spokane College. There, WFSE and the college had reached an apparent agreement on a contract proposal, including a provision to allow time off for attending contract administration training sessions (article 4). When contract negotiations had been substantially concluded, there was a change in key administrative personnel at the college, including the president. The new president objected to article 4 and consulted the Assistant Attorney General assigned to the college. Based on the Assistant Attorney General's advice, the board of trustees removed the provision for paid leave time from article 4 and ratified the remainder of the contract. The asserted reason for modifying article 4 was a potential violation of Const. art. 8, § 5 (prohibition against gifts of state funds). In the course of the unfair labor practice adjudication subsequently filed by WFSE, the HEP Board

found the college had breached its obligation to bargain in good faith by its actions. It ordered the college to ratify article 4 and awarded attorney fees and costs to WFSE. The college appealed the imposition of fees and costs, although it did not contest the unfair labor practice finding, and we overturned the HEP Board's award of attorney fees, reasoning that Spokane's defense to the unfair labor practice charge, though unsuccessful, was not totally without merit. The parties had substantially completed negotiation over a proposed contract, under the terms of a collective bargaining agreement already in place. The college was already aware of the concessions WFSE was prepared to make in exchange for a release time provision. With that knowledge, a new college president, who had not participated in the negotiations, entertained reasonable doubts as to the validity of the release time provision under Const. art. 8, § 5.

In the case at bar, the parties were unable to come to agreement concerning the initial terms of bargaining itself. The parties went before the HEP Board on two occasions regarding the same issue: the refusal of the college to *include* the option of release time as a bargainable issue. Although the college was twice directed by the HEP Board, and admitted in its briefs that release time was a bargainable issue, they did not include the option of release time in any negotiating session. In *Board of Trustees,* the issue had already been negotiated, and the new Spokane College president was therefore aware of the concessions WFSE was prepared to make in exchange for a release time provision. In the instant case, WFSE was never given the opportunity to bargain the issue.

To support their position before the HEP Board that an employer was *not* required to include release time as a bargainable item, the college cited an Attorney General opinion for the proposition that granting of release time by a state institution may be unconstitutional. That opinion, however, makes it clear that an *unreciprocated,* gratuitous grant of release time so that employees may engage in gen-

eral union activities would be "of doubtful validity" (AGLO 27 (1977)) under Const. art. 8, § 5. HEP Board noted this argument in its finding 11. By refusing to include even the possibility of release time at the prenegotiation stage, the college effectively precluded WFSE from offering any "benefit" acceptable to the employer, in conformance with AGLO 27 (1977). The HEP Board thereby noted that the college's reasoning was contradicted by the very authority it had cited to support its contention.

Although the HEP Board could not have anticipated the language this court would require to uphold an award of attorney fees under RCW 41.56.160, its disposition of the college's arguments before it indicates that they did, in fact, find the college's arguments "frivolous" and "meritless." The HEP Board found that a representative of the college had met with employee members of the bargaining team to discuss the negotiations in the absence of the employees' exclusive bargaining representative. Finding 6, at 3. The HEP Board concluded that the college's arguments as to unconstitutionality were not supported by its own authority (conclusion 3, at 6), and that the college had acted "unilaterally and arbitrarily" by rejecting "any consideration of [WFSE's] interpretation of what is reasonable, contrary to systemwide practices." Conclusion 6, at 7–8. The HEP Board's description of the college's course of dealings with WFSE "neither comports with good faith bargaining nor serves as a basis for a meritorious defense to an unfair labor practice charge." *Board of Trustees,* at 70. Neither can it be said that the college reasonably relied in good faith on the advice of its assigned Attorney General, where the arguments advanced by counsel were contradicted by the very authority cited to support them. This is in contrast to the case involving the Spokane College president in *Board of Trustees,* at page 71, where we said: "There is no indication that the president or the board [of trustees] had reason to question the advice given."

*Board of Trustees* does not afford state institutions of higher education the opportunity to shield their disregard

for the statutory mandate to engage in good faith negotiations behind an assigned Attorney General's advice. Community colleges are required to remain faithful to their statutory obligation to bargain in good faith. This duty must be reflected in the college's course of conduct. In the case at bar, the underlying course of conduct and the lack of merit of the legal arguments raised in defense of the unfair labor practice charge provide sufficient grounds for the award of $2,918.39 in legal expenses, which represents an "appropriate remedial order" authorized by RCW 41.56-.160 and *Board of Trustees*. The imposition of fees by the HEP Board was not automatic, *Board of Trustees*, at 69, but represented a well reasoned and restrained use of agency remedial powers. The fee award was imposed only after prior attempts to reconcile the college to its bargaining duty proved futile. The remedy is proper to curtail the college's arbitrary behavior and to prevent its reoccurrence, and is necessary to make the order to negotiate in good faith at reasonable times effective. *Board of Trustees*, at 69. We cannot say the HEP Board abused its discretion in ordering payment of attorney fees and litigation expenses.

REQUEST FOR ATTORNEY FEES ON APPEAL

WFSE requests this court to order the college to pay WFSE's attorney fees and costs on appeal. Although WFSE bases its request for attorney fees on appeal on the same grounds as it asks the court to uphold the HEP Board's 1979 award, these requests comprise distinct issues. This court's power to impose attorney fees and costs as a sanction for bringing a frivolous appeal is pursuant to RAP 18.9, rather than under RCW 41.56.140 (as set forth in *Board of Trustees*).

The standard for determining whether an appeal warrants imposition of sanctions pursuant to RAP 18.9(a) was recently set forth by this court as follows:

> In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay, justifying the imposition of terms and compensatory dam-

ages, we are guided by the following considerations: (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Streater v. White,* 26 Wn. App. 430, 434–35, 613 P.2d 187 (1980); *see also Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 9, 15, 665 P.2d 887 (1983).

*Boyles v. Department of Retirement Sys.,* 105 Wn.2d 499, 509, 716 P.2d 869 (1986) (Utter, J., concurring in part, dissenting in part).

█ The parties have been at odds over this issue for over 10 years. They have been before the HEP Board twice and before this court twice, over what amounts to less than 20 working hours for three employees. Such an obdurate course of behavior is directly at odds with the best interests of the employees, the college, and the public. In the course of this long–lived squabble, however, the college did advance a meritorious argument on the issue of mootness in the course of an unfair labor practice proceeding, hitherto unresolved by this court. We cannot say that there were "no debatable issues upon which reasonable minds might differ". *Boyles,* at 509. Accordingly, WFSE's request for attorney fees on appeal is denied.

We reverse the trial court's order holding the unfair labor practice decision moot and its remand to the HEP Board on the issue of attorney fees. The order of the HEP Board finding the college guilty of an unfair labor practice is affirmed, and we uphold the HEP Board's award of attorney fees to WFSE.

DOLLIVER, C.J., and BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.