IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ANNA ELLERO KYDD, an individual, | ) ) ) | No. 71364-7-I |
| Respondent, | ) ) ) | |
| v. | ) ) | |
| KYDD INVESTMENTS, a Washington general partnership, and JOHN KYDD, | ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) ) | FILED: May 5, 2014 |

VERELLEN, A.C.J. — This appeal involves a dispute over $6,663.81 in

maintenance costs for a family vacation house owned by a family partnership, Kydd

Investments. The partnership seeks to recover maintenance costs from Anna Kydd for

the time she used the property. Anna inherited a life estate in her late husband Bill

Kydd's interest in the partnership. The parties stipulated that Anna's interest was that of

a "transferee or assignee" with no management rights and that she was "not a partner."[1]

The central question is whether Anna is individually liable to the partnership for

maintenance costs. Anna argued, and the trial court concluded, that upon voluntarily

relinquishing her interest in the partnership, Anna has no remaining liability to the

partnership. The precise legal arguments on appeal are problematic because of the

significant gaps in the amended and restated general partnership agreement, shifting

---

[1] Clerk's Papers at 1-2.

positions taken by the parties throughout this lengthy dispute, and the lack of thorough briefing to support many of the positions the parties advance in this appeal. The critical consideration is the source of Anna's purported obligation to pay maintenance costs.

Neither the Revised Uniform Partnership Act (RUPA), chapter 25.05 RCW, nor the partnership agreement imposes individual liability on a nonpartner transferee for partnership expenses. Under RUPA, the only interest a partner can transfer is a right to share in allocations of profits and losses and to receive distributions the partner would have been entitled to receive.[2] The partnership agreement does not address payment of expenses by a transferee. The stipulation contains a reference to Anna paying maintenance costs, but as clarified at oral argument, there is no contention that Anna has an independent contractual obligation to pay the maintenance costs.

Consistent with RUPA and the partnership agreement and under the unique facts and limited briefing, we conclude that the trial court did not err in determining that Anna has no obligation to the partnership after relinquishing her interest. We affirm.

## FACTS

In 1988, Bill formed the partnership for the purpose of acquiring and owning a Hood Canal residence known as the Chinom Point property. During his life, Bill owned a 64 percent interest in the partnership and was managing partner. His children John, Melissa, and Susan each held a 12 percent interest and were class A partners. Bill married Anna in 1991. The two regularly stayed at the Chinom Point house until Bill's death in 2006.

---

[2] RCW 25.05.205, .210.

Bill prepared the 1996 partnership agreement, which provides that the family "shall share use rights to the Property in a spirit of reasonableness, flexibility, informality and mutual accommodation."[3] Although the partnership agreement authorized Bill to execute an inter vivos transfer of his interest to Anna, making her a class B partner with no management rights, such a transfer never occurred. And although the partnership agreement provided that upon Bill's death, "a new Managing Partner shall be elected by a majority of Class A Partners,"[4] this also did not occur. It appears that upon Bill's death, all parties considered Anna the managing partner.[5] However, Anna did not become a partner upon Bill's death.

After Anna filed a lawsuit in 2007 seeking to dissolve the partnership, the remaining partners realized that Anna was not a partner. The remaining partners filed counterclaims against Anna for waste based on her failure to obtain permits for extensive construction on the home.

The trial court bifurcated the trial. The first phase was to determine each party's status and rights under the partnership agreement, and the second was to resolve the parties' respective claims. The first issue was resolved by the parties' stipulation that Anna's interest entitled her "to the rights of a transferee or assignee of a partnership interest" and that she was "not a partner."[6] The stipulation also observes that Anna's rights include "the right to 64% of the use of the partnership property . . . subject to

---

[3] Clerk's Papers at 424.

[4] Id. at 421.

[5] Anna paid expenses associated with the house, including dues, taxes, and insurance. She lived in the house and undertook construction projects on the property.

[6] Clerk's Papers at 1-2.

3

responsibilities, including 64% of the reasonable costs of maintaining the property."[7]  In the second phase, the court determined that Anna lacked authority to request dissolution of the partnership and that she was liable for waste.  The court entered judgment in favor of the partnership for $70,816.44 in damages, plus attorney fees.

Anna satisfied the judgment and continued to use the vacation house.  The partnership billed Anna for 64 percent of the expenses it incurred in maintaining the residence.  Anna contested the amount due.  The dispute led Anna to seek clarification from the court as to whether she was entitled to withdraw from the partnership without paying the costs the partnership claimed she owed.

The trial court granted Anna's motion, determining that the parties were "bound by the terms of the partnership agreement where they are not inconsistent with the Stipulation" and that "[w]here the agreement is silent, RUPA controls."[8]  The court referred to a default by Anna under the terms of the partnership agreement related to capital accounts and failures to meet capital calls.  The court ultimately concluded that under RUPA and consistent with the stipulation and partnership agreement, Anna's interest as an assignee was "extinguished [and] revert[ed] to the other partners without further obligation . . . under the partnership agreement."[9]

The partnership appeals.

## ANALYSIS

The partnership contends that Anna is personally liable to the partnership and subject to a judgment in favor of it for a portion of the maintenance costs incurred before

---

[7] Id. at 2.

[8] Id. at 162.

[9] Id.

4

Anna relinquished her interest as a transferee. The partnership overstates the obligations of a transferee of a partner's transferable interest.

Washington's RUPA expressly provides that a transferee has the right to "receive, in accordance with the transfer, allocations of profits and losses of the partnership and distributions to which the transferor would otherwise be entitled."[10] Other state statutes similarly provide that a transferee has no individual obligation, either to the partnership or to third-party creditors, for operating expenses or obligations incurred by the partnership.[11] The transferor retains all remaining partner rights and duties and remains personally liable for partnership obligations.[12] The partnership offers no authority that a transferee's statutory right to an allocation of any losses is equivalent to a partner's liability for partnership losses or a partner's obligation to make a capital contribution to provide funds required by the partnership.

Neither party provides persuasive argument or legal authority that the partnership agreement altered these statutory rights or imposed any additional obligations on Anna. The partnership agreement contains no provision that Anna has any obligation equivalent to a partner's liability for partnership debt or obligation to make a capital contribution. The partnership agreement contains no definitions of "profit" or "loss" for

---

[10] RCW 25.05.210(2)(a).

[11] See Warren v. Warren, 12 Ark. App. 260, 675 S.W.2d 371 (1984) (assignee is not personally liable for partnership debts unless he or she is made a partner); Kanarek v. Gadlex Assocs., 115 A.D.2d 592, 496 N.Y.S.2d 253 (1985) (assignee's interest in partnership profits and surplus is subject to the claims of partnership creditors but assignee is not otherwise liable); In re New Era Co., 115 B.R. 41 (Bankrtcy. S.D. N.Y. 1990), aff'd, 125 B.R. 725 (S.D.N.Y. 1991) (although an assignment of a partnership interest may be made without the consent of co-partners, in such cases the assignee is entitled only to receive the profits of the assigning partner and does not become a co-partner with the nonassigning partners).

[12] RCW 25.05.210(4).

any purpose.[13] Accordingly, we give the terms their ordinary meanings.[14] "Profit" is ordinarily defined as the excess of returns over expenditure. "Loss" is ordinarily defined as expenditure in excess of the amount earned or received. The terms of the partnership agreement did not obligate Anna individually, as a transferee, to compensate the partnership for a share of its ongoing expenses.[15]

Finally, and most significantly, the partnership does not contend that there is any independent contract claim based on the stipulation. The parties stipulated:

> 1. Plaintiff, ANNA KYDD, received a life estate in William L. Kydd's Class A partnership in Kydd Investments. Under the Revised Uniform Partnership Act ("RUPA") the nature of the interest conveyed to Plaintiff is as a transferee or assignee.

> 2. The interest held by Plaintiff entitles Plaintiff to the rights of a transferee or assignee of a partnership interest, and under the Kydd Investments Partnership, such rights include the right to 64% of the use of the partnership property distributed equitably throughout the year, subject to responsibilities including, but not limited to, 64% of the reasonable costs of maintaining the property; and

> 3. Plaintiff's additional rights and responsibilities as a transferee are as stated in RCW 25.05.205, RCW 25.05.210 and RCW 25.05. . . .

> . . . .

> . . . [B]ased upon the stipulation by Plaintiff, . . . her status in the Kydd Investment Partnership is that of a transferee and not a partner.[16]

___

[13] In the partnership agreement, "gain" and "loss" are referenced as "[a]ll items of income and gain of the Partnership shall be allocated among the Class A Partners pro rata in accordance with the number of Class A Units held by them at the time of the allocation. All items of loss, deduction and credit of the Partnership shall be allocated among all Partners in accordance with their relative capital account balances at the time of the allocation." Clerk's Papers at 424.

[14] Washington Federal Sav. and Loan Ass'n v. McNaughton Group, __ Wn. App. __, 319 P.3d 805, 811 (2014).

[15] On the existing briefing, we decline to accept the premise that the partnership agreement compels that the use of the vacation home be treated as income and maintenance costs as expenses for purposes of defining the obligations of a transferee.

[16] Clerk's Papers at 30.

As clarified at oral argument, the partnership does not contend that the stipulation was the source of an independent obligation but rather was an attempt to restate the obligations of a transferee under the partnership agreement and RUPA.[17]

Further, the partnership does not establish that the stipulation provides a basis for imposing a personal judgment against Anna as an implied remedy for failure to pay maintenance costs. Even under the premise that use of the house is "income" and maintenance costs are expenses, the stipulation does not address what remedies are available to the partnership if Anna, as a transferee, does not pay maintenance costs. The logical extension of the partnership's argument is that Anna is burdened with obligations equivalent to those of a partner while limited to the rights of a transferee. We are not persuaded. The partnership presents no compelling argument or authority that Anna became individually liable for these expenses upon relinquishing her interests.

The partnership challenges the trial court's reliance on the partnership agreement provisions governing failed capital contributions.[18] We do not rely on those provisions. We can affirm the trial court on any rationale supported by the facts and the

---

[17] The partnership argues that the stipulation is an agreement in its opening brief, but also acknowledges that the trial court "made no finding whether or not the STIPULATION was or was not an agreement or a contract." Appellant's Reply Br. at 3 n.4. The partnership relies upon finding of fact 18, entered at the end of phase two of the litigation, but that finding generally recites that the stipulation sets out Anna's rights and obligations regarding the partnership. The finding does not include any determination that Anna has an independent contractual obligation under the stipulation.

[18] The trial court may have considered the remedies for failed capital contributions at paragraphs 8.3 to 8.7 of the partnership agreement because of positions taken by the partnership earlier in the proceedings, such as the April 18, 2011 letter from the partnership's attorney invoking the capital account default and remedy provision of paragraph 8.6 of the partnership agreement when declaring Anna in default.

applicable law.[19] Especially in view of the positions taken at oral argument, the limited briefing provided and the unique facts presented, the partnership fails to demonstrate that the trial court erred in declining to award judgment against Anna in favor of the partnership for past maintenance costs upon her relinquishment of all interests in the partnership.

## Attorney Fees

Anna asserts that she is entitled to attorney fees on the basis that the partnership's appeal is frivolous.[20] An appeal is frivolous if the appeal presents no debatable issues upon which reasonable minds might differ and is so devoid of merit that there is no possibility of reversal.[21] Although the partnership has not prevailed, its arguments on appeal are not frivolous.

Affirmed.

_____ ACJ

WE CONCUR:

_____
Appelwick, J.

Cox, J.
_____

---

[19] Deep Water Brewing, LLC v. Fairway Res., Ltd., 170 Wn. App. 1, 11, 282 P.3d 146 (2012).

[20] See RAP 18.9(a); Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004).

[21] Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 241, 119 P.3d 325 (2005) (quoting Green River Cmty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd., 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986)).