

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| NICKOLAS KOVTUSCHENKO, Individually and as Personal Representative of THE ESTATE OF ALEXANDER KOVTUSCHENKO, THE ESTATE OF LYDIA ARICH, and THE LYDIA ARICH FAMILY TRUST, | ) ) ) ) ) ) | No. 40331-9-III |
| Respondents, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| EVAAN SYRAH SOLOMON, aka IVAN KRIGER, and Natalya Kriger, Jane Doe Solomon/Lellex, and their Marital Community; and SIMON LELLEX, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| LYUDMILA I. GREBEN and ANDREY SAMOLOVOV, and their Marital Community, | ) ) ) ) | |
| Appellants. | ) | |

Staab, J. — Lydia Arich created a living trust and transferred ownership of real property into the trust. After the city of Spokane commenced abatement proceedings against the property, Arich and her son executed a quitclaim deed conveying the property to third parties who later quitclaimed the property to the appellants, Andrey Samolovov

and Lyudmila Greben. Several years later, Arich's other son, Nickolas Koytuschenko, on behalf of himself and his mother's estate, filed this quiet title action against the appellants arguing that the first quitclaim deed was invalid and did not transfer title to the property from the trust. On summary judgment, the trial court concluded that the quitclaim deed was invalid and issued an order quieting title and a writ of restitution. Samolovov and Greben appeal that decision.

We hold that the court did not err in concluding that the first quitclaim deed was invalid but did err in entering final orders without addressing the affirmative defense raised by Samolovov and Greben. We therefore affirm in part and reverse in part, remanding for further proceedings.

## BACKGROUND

Because the trial court granted summary judgment in favor of Nickolas,[1] the facts are set forth in the light most favorable to Samolovov and Greben.

In December 1999, Lydia Arich formed The Lydia Arich Family Trust (Trust), comprised of her bank accounts, personal property, and real property, including a house located at 548 E. Central Avenue (Property). The Trust named Arich as Trustee "during her life and so long as she shall remain competent and capable of managing the Trust."

---

[1] Because Nickolas, Alexander, and John share the same last name, we refer to them by their first names for clarity. No disrespect is intended.

Clerk's Papers (CP) at 189. The terms of the trust empower the Trustee to sell any real or personal Trust property.

The Trust designated Arich's sons, Alexander and John, as successor trustees, in that order, upon Arich's death or if her attending physician deems her mentally incapacitated. The Trust acknowledged Nickolas as one of Arich's children but does not name him as a successor trustee.

*Prior Abatement Action*

In April 2017, the city of Spokane (City) instituted an abatement action against the Property. The Trust entered into a stipulated order regarding the abatement, signed by Arich and her son "Alex" as "Power of Attorney." CP at 61. The order barred Arich and John from being on the Property without authorization but allowed Arich to seek authorization to access the Property to rehabilitate it and prepare it for sale. Samolovov and Greben were not parties to the abatement action.

In October 2017, a city attorney filed a declaration stating that Arich and Alexander had failed to rehabilitate the Property as agreed. The City subsequently petitioned the court to appoint a general receiver for the Property due to the Trust's failure to return it to productive use.

In November 2017, Alexander executed a quitclaim deed conveying the property to Ivan and Natalya Kriger for $1,000. The deed, signed by Arich and "Alex" as grantors, does not indicate that Arich signed in her capacity as Trustee. John signed the

deed as a witness. The notary acknowledgement provides that the notary was present for Alexander's and John's signatures but does not indicate that the notary was present for Arich's signature.

On December 1, 2017, the day after the deed was signed, the Spokane County Superior Court held a hearing on the City's petition to appoint a general receiver. The court granted the petition, authorizing the receiver to sell the property. Later that month, Arich passed away from congestive heart failure.

In January 2018, the City sent a letter to Arich, Alexander, and the Krigers, notifying them of a status hearing regarding the Property set for April. The letter stated that the City expected the Property to be rehabilitated and inhabited before the hearing.

In April 2018, the City moved to dismiss the abatement action, stating that "The Lydia [sic] Arich Family Trust sold the Property to Ivan Kriger, who has returned it to productive use." CP at 113. The City requested termination of the stipulated abatement order, discharge of the receiver, and release of the lis pendens on the Property.

Later that month, Ivan Kriger executed a quitclaim deed conveying the Property to Andrey Samolovov and Lyudmila Greben for a purported sum of $1,000.

John passed away in July 2019, and Alexander in September 2020, leaving Nickolas as Arich's sole surviving heir.

*Nickolas's Quiet Title Action*

In September 2023, Nickolas, individually and in his capacity as personal representative of Arich's estate, initiated a quiet title action concerning the Property. He alleged that the quitclaim deed to the Krigers was executed in violation of the Trust. Specifically, Nickolas asserted that: (1) the Property remained vested in the Trust, (2) title should have transferred to John upon Arich's death, (3) John became Trustee upon Arich's passing, (4) Alexander improperly executed the quitclaim deed contrary to the Trust's terms, and (5) since Arich was alive when the deed was signed but did not execute it as Trustee, the deed was void. Attached to the complaint was a "Litigation Guarantee" from First American Title Insurance Co. indicating that title to the property remained vested in the Lydia Arich Family Trust.

Samolovov and Greben, appearing pro se,[2] answered the complaint. They asserted the following affirmative defense in their answer:

> The plaintiff has failed to mentioned [sic] that on April 24th, 2017, a Stipulated Order of Abatement and Closure of 548 E Central, Spokane, Washington was entered under cause number 2017-02-01476-6 (Please see Exhibit A). Both Lidya [sic] and Alex Kovtuschenko agreed with the order and signed it. The residence was found to be a drug house nuisance after numerous complaints from the public. There are numerous declarations from the public under the above mentioned cause number.

---

[2] Samolovov and Greben obtained counsel at some point after they filed their answer. Their counsel filed the response to Nickolas's summary judgment motion and their motion for reconsideration.

> The Plaintiffs also fails [sic] to mentioned [sic] that after the entry of the above mentioned order, the Plaintiffs failed to bring the property into compliance and on December 1, 2017 a general receiver was appointed over the property. The Lidya [sic] Arich Family Trust sold the property to Ivan Kriger, who has returned it to productive use. After Ivan Kriger purchased the property he invested quite a bit of money and time to return the property to productive use. Due to Ivan Kriger's investment, the court on April 13th, 2018 entered an order of Voluntary Dismissal and Termination of Abatement and Receivership RE: 548 E. Central. Spokane, Washington.

CP at 53.

In November 2023, Nickolas moved for summary judgment, arguing that the quitclaim deed to the Krigers was invalid and seeking an order quieting title to the trust and authorizing a writ of restitution. His motion did not address or seek to resolve Samolovov and Greben's affirmative defense.

Samolovov and Greben opposed the motion, asserting that there was a factual dispute over whether the Lydia Arich Family Trust was listed as a grantor on the deed. However, they did not submit any evidence that Arich was either dead or deemed mentally incapacitated at the time of the quitclaim deed to the Krigers.

In February 2024, Andrey Samolovov filed a declaration asserting that he and Greben had paid a significant amount of money for the house. Initially, they paid the receiver $4,183.75. Later, they invested $58,000 in repairs to the property before paying the Krigers $25,000 to purchase the property.

6

The trial court held a hearing on Nickolas's summary judgment motion. Nickolas's attorney argued that the deed was void because Arich's signature was not notarized and the Trust was not listed as a grantor. He asserted that title to the Property remained vested in the Trust. Counsel for Samolovov and Greben argued that the Trust should be judicially estopped from challenging the deed, as it had previously represented the Property as sold in the abatement action.

While the court suggested that judicial estoppel was not available to Greben and Samolovov because they were not parties to the abatement action, the court ultimately found the deed "invalid on its face" because Alexander lacked authority to sign on behalf of the Trust. The court pointed out that the signature line on the deed did not reference the Trust. The court also found the deed invalid due to Arich's missing notary acknowledgment. As a result, the court ruled that the initial conveyance to the Krigers was void.

Following the hearing, the trial court entered an order granting Nickolas's summary judgment motion, quieting title in the Trust's name and issuing a writ of restitution.

Samolovov and Greben moved for reconsideration, arguing that the evidence raised a genuine issue of material fact as to whether Arich was incapacitated at the time she signed the quitclaim deed to the Krigers. The trial court denied their motion.

Samolovov and Greben timely appeal.

ANALYSIS

VALIDITY OF QUITCLAIM DEED

The trial court concluded as a matter of law that the quitclaim deed to the Krigers was invalid because Arich did not sign the document as trustee for the trust that Arich was the sole trustee at the time of the deed and her signature was not notarized.[3] On appeal, Samolovov and Greben argue that questions of fact regarding the identity of the Trustee and the Trust's intent to convey the Property to the Krigers precluded summary judgment. We conclude that the trial court did not err in finding the quitclaim deed to the Krigers was legally invalid.

We review a trial court's order on summary judgment de novo, engaging in the same inquiry as the trial court. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

The evidence is undisputed that Arich was the sole trustee at the time she signed the quitclaim deed to the Krigers. The Trust explicitly designates Arich as the Trustee with the sole authority to sell Trust property "during her life and so long as she shall

---

[3] In responding to Samolovov and Greben's appeal, Nickolas Kavtuschenko does not present argument to support the court's conclusion that Arich needed to the sign the quitclaim deed as trustee.

8

remain competent and capable of managing the Trust." CP at 189. A successor Trustee would be appointed only upon Arich's death or if a physician deemed her mentally incapacitated. Despite Samolovov and Greben's claims that Arich was old and died shortly after she signed the deed, it is undisputed that at the time she was still alive and there is no evidence that her attending physician had deemed her mentally incapacitated. Therefore, by the terms of the Trust, Alexander could not be the trustee and did not have the authority to convey the Property to the Krigers.

Samolovov and Greben argue that Alexander was Arich's power of attorney, as evidenced by signatures on the stipulated abatement order. However, this fact alone does not establish that Alexander had authority to sign the deed as Trustee. Alexander's signature on the deed does not indicate that he signed as Arich's power of attorney. Samolovov and Greben presented no evidence that Alexander had the legal authority to act as power of attorney for Arich in her capacity as Trustee.

Finally, Samolovov and Greben assert that Alexander could have assumed the role of Trustee if John had disclaimed the position. They contend that John's signature as a witness on the deed suggests he believed Alexander was acting as Trustee. However, once again, Samolovov and Greben provided no evidence that Arich was not the Trustee. John's signature as a witness does not create a material issue of fact as to whether Arich was the Trustee.

Samolovov and Greben failed to provide any documentation establishing that Arich was either deceased or deemed mentally incapacitated by her attending physician. In the absence of such evidence, they fail to raise a genuine issue of material fact to dispute that Arich was the sole Trustee at the time the quitclaim deed was executed. As the sole Trustee she was the only one with authority to convey the Property. As the only person with authority to convey the property, Arich's signature needed to be notarized. RCW 64.04.020.[4] It is undisputed that her signature was not notarized. Because her signature on the deed was not notarized, the deed was invalid as a matter of law.

AFFIRMATIVE DEFENSES

Samolovov and Greben also contend that the trial court erred by granting summary judgment without resolving their affirmative defense. They characterize the affirmative defense as asserting judicial estoppel while acknowledging that their answer did not explicitly reference the term "judicial estoppel." They rely on *Robbins v. Mason County Title Insurance Co.*, 195 Wn.2d 618, 636, 462 P.3d 430 (2020).

A party moving for summary judgment on its claims must also address any affirmative defenses pleaded by the opposing party in its motion, thereby providing notice that it seeks summary judgment based on those defenses. *See Robbins*, 195 Wn.2d

---

[4] "Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."

at 635-37; *see also Evanston Ins. Co. v. Penhall Co.*, 13 Wn. App. 2d 863, 870-71, 468 P.3d 651 (2020). If the moving party fails to do so, the proper remedy is to remand the case for the trial court to resolve any unaddressed affirmative defenses. *See Robbins*, 195 Wn.2d at 635-37.

In *Robbins* the Supreme Court held that a motion for summary judgment on liability that did not specifically address or attack the non-moving party's affirmative defenses did not extinguish them. 195 Wn.2d 618. Instead, the affirmative defenses needed to be addressed and considered by the trial court on remand. *Id*.

Here, the parties dispute the nature and character of the affirmative defense but Nickolas does not deny that Samolovov and Greben raised an affirmative defense in their answer and does not deny that his motion for summary judgment did not seek to resolve the affirmative defense. Similarly, we do not decide the nature and character of the affirmative defense. While Samolovov and Greben contend that their affirmative defense encompasses judicial estoppel, the trial court did not decide this case on the theory of judicial estoppel. Regardless, because the motion on summary judgment did not extinguish the affirmative defense, whatever its nature, the defense must be addressed on remand.

Consequently, while the court did not err in finding that the quitclaim deed to the Krigers was legally invalid, it did error in entering an order quieting title and issuing a writ of restitution before addressing the affirmative defense.

ATTORNEY FEES ON APPEAL

Nickolas requests an award of reasonable attorney fees under RAP 18.9, arguing that this appeal is frivolous and intended to frustrate the Arich estate's ability to sell the Property and close probate. In response, Samolovov and Greben assert that there is no legal or factual basis for an award under RAP 18.9 because they have presented a debatable reason for reversal. We conclude that the appeal is not frivolous and decline to award attorney fees under RAP 18.9.

Under RAP 18.9(a), "[t]he appellate court on its own initiative or on motion of a party may order a party or counsel . . . who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." "Appropriate sanctions may include . . . an award of attorney fees and costs to the opposing party." *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008).

An appeal is considered frivolous if it "cannot be supported by any rational argument on the law or facts." *Id.* at 697. However, an appeal is not frivolous if it raises "debatable issues upon which reasonable minds might differ." *Holiday v. City of Moses Lake*, 157 Wn. App. 347, 356, 236 P.3d 981 (2010). Additionally, raising even one meritorious issue precludes a finding of frivolousness, even if other issues in the appeal lack merit. *Green River Cmty. Coll., Dist. No. 10 v. Higher Ed. Pers. Bd.*, 107 Wn.2d

427, 730 P.2d 653 (1986). Courts "resolve all doubts as to whether an appeal is frivolous in favor of the appellant." *Wood v. Thurston County*, 117 Wn. App. 22, 29, 68 P.3d 1084 (2003).

Here, Samolovov and Greben raised at least one meritorious issue by correctly arguing that Nickolas failed to move for summary judgment on their affirmative defense. Given this, their appeal is not frivolous, and an award of attorney fees under RAP 18.9 is unwarranted.

Affirmed in part and reversed in part.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Murphy, J.